UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                              PLAINTIFF

vs.                                                          NO. 3:22-CR-33-BJB
                                                             *Electronically Filed*

QUINTEZ O. BROWN                                                      DEFENDANT

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO DISMISS FOR
LACK OF JURISDICTION OVER DEFENDANT BROWN**

The United States hereby files its response to defendant Quintez O. Brown's Motion and

Memorandum to Dismiss for Lack of Jurisdiction Over Defendant Brown.   DN 15.

**Factual Background**

On February 14, 2022, the defendant attempted to kill C.G. by shooting at him with a

firearm because C.G. had been campaigning as a candidate for mayor of Louisville in a primary

election and to intimidate C.G. from campaigning.   DN 1.

**Procedural History**

On March 28, 2022, a Grand Jury in Jefferson Circuit Court charged the defendant with

one count of Attempted Murder, in violation of KRS 507.020, and four counts of First-degree

Wanton Endangerment, in violation of KRS 508.060.   The state court ordered that bail be set at

$100,000.   After a community bail fund posted the $100,000 bond on February 16, 2022, the

defendant was released on a home incarceration program.   The Jefferson Circuit Court case

against the defendant is pending.

On April 6, 2022, a Grand Jury in the Western District of Kentucky charged the defendant

with one count of Interference with a Federally Protected Activity by attempting to murder C.G., a mayoral primary candidate, in violation of Title 18, United States Code, Section 245(b)(1)(A) (Count 1) and Use and Discharge of a Firearm During and in Relation to a Crime of Violence, in violation of Title 18, United States Code, Section 924(c) (Count 2). DN 1. The United States District Court for the Western District of Kentucky issued an arrest warrant for the defendant on April 6, 2022. DN 9. Following coordination with the Louisville Metro Department of Corrections (LMDC) Home Incarceration Program (HIP), the Federal Bureau of Investigation (FBI) arrested the defendant on April 6, 2022. *See* Exhibit 1 (Declaration of LMDC Sergeant Danny Skaggs). Defendant made his initial appearance on April 7 and 8, 2022. DN 10.

On April 8, 2022, the defendant filed a Motion to Dismiss the prosecution against him complaining that federal agents "unlawfully seiz[ed] and arrest[ed] Brown, who suffers from a significant mental illness" thereby violating his constitutional rights, "specifically the Fifth, Sixth, Eighth, and Tenth Amendments of the United States Constitution." DN 15 at 3. For the reasons set forth herein, the defendant's Motion to Dismiss the Indictment should be denied.

## Analysis

In his motion to dismiss, the defendant complains that the federal prosecution against him should be dismissed because (1) "Prosecuting him in State and Federal Court places him 'twice' in jeopardy in violation of the Fifth Amendment;" (2) the arrest of the defendant "without proper authority denies Brown due process of law" and "[t]his Court does not have personal jurisdiction over Brown since he has not been lawfully presented to the Court;" (3) the arrest of the defendant "while his State charges were pending, and Brown was released on orders of the Jefferson Circuit Court, violates Brown's right to . . . a speedy trial;" and (4) "unlawfully seizing and arresting

2

Brown, and incarcerating him in a county jail prior to trial constitutes cruel and unusual punishment."   DN 15 at 3-4, 6.   For the reasons set forth below, the defendant's Motion to Dismiss the Indictment should be denied.

### 1.    The Federal Prosecution Does Not Violate the Double Jeopardy Clause

The Double Jeopardy Clause states that no person shall "be subject for the same offen[s]e to be twice put in jeopardy of life or limb."   U.S. CONST. amend. V.   It is well established, however, that the Fifth Amendment does not bar two prosecutions for the same conduct by separate sovereigns – such as Kentucky and the United States.   *Gamble v. United States*, 139 S. Ct. 1960, 1962 (2019); *Heath v. Alabama*, 474 U.S. 82, 88-89 (1985); *see also United States v. Willis,* 981 F.3d 511, 515 (6th Cir. 2020).   In other words, successive prosecutions in state and federal court do not violate the Fifth Amendment guarantee against double jeopardy.   *See Koon v. United States*, 518 U.S. 81, 112 (1996) ("Successive state and federal prosecutions do not violate the Double Jeopardy Clause."); *United States v. Patterson*, 853 F.3d 298, 301 (6th Cir. 2017) ("Ohio and the United States derive their power to prosecute from separate sources of sovereignty and thus may prosecute the same individual under their separate legal codes.   Such dual prosecutions do not violate the Double Jeopardy Clause.").

Moreover, no double jeopardy problem exists here, where jeopardy had not yet attached. It has long been established that jeopardy does not attach until "the defendant is put to trial before the trier of facts."   *United States v. Jorn*, 400 U.S. 470, 479 (1971); *see also United States v. Gamble*, 141 F.3d 621, 623 (6th Cir. 1998) (denying motion to dismiss on double jeopardy grounds where jeopardy had not attached); *Green v. United States*, 355 U.S. 184, 188 (1957) (holding that "a [criminal] defendant is placed in jeopardy once he is put to trial before a jury").   Ultimately,

3

the defendant's claim that the instant prosecution violates the Double Jeopardy Clause fails because (1) the Constitution does not prohibit successive state-federal prosecutions, and (2) jeopardy has not attached.

### 2.    The Arrest of the Defendant Was Proper and the Court has Jurisdiction

Second, the defendant claims that because "no writ of *habeas corpus ad prosequendum* was issued to seize and arrest Brown while under release on terms of home confinement," the defendant "is being unlawfully held and detained by the federal government" and "this Court does not have personal jurisdiction over Brown."   DN 15 at 6 (italics added).   Preliminarily, there is no requirement under federal law that the United States obtain a writ of *habeas corpus ad prosequendum* to obtain custody of an individual on pretrial home incarceration.   Even if there were such a requirement, a defendant has no standing to object to the failure to obtain a writ of *habeas corpus ad prosequendum*.

On April 6, 2022, a federal arrest warrant was issued for the defendant in the instant matter. DN 9.   At the time, the defendant was on home detention as a condition of his pretrial release in the state case against him.   The LMDC manages the HIP, which includes defendants on pretrial home detention in state cases.   Prior to the indictment in this case, the United States Marshal Service (USMS) and LMDC discussed the appropriate procedure for making a federal arrest of someone on HIP.   Ex. 1.   Pursuant to that procedure, no writ was needed.   After receiving the arrest warrant for the defendant, FBI Agents consulted with both the USMS and counsel for LMDC, specifically confirming that while LMDC required a writ of *habeas corpus ad prosequendum* for pretrial detainees at a LMDC correctional facility, no writ was required to obtain custody of individuals who were on HIP.

4

Pursuant to the agreed-upon procedure, on the evening of April 6, 2022, HIP officers[1] went to the defendant's home, removed his geolocation monitor, took him outside of the home, and transferred him to the FBI pursuant to the federal arrest warrant.[2]   *See* Ex. 1.   The FBI then transferred the defendant to the Grayson County Detention Center to await his initial appearance in the instant matter.   The defendant's initial appearance occurred on April 7 and 8, 2022.   DN 10.   The defendant claims that because his transfer to federal custody was done without a writ, this Court lacks jurisdiction.   DN 15 at 4-6.

A writ of *habeas corpus ad prosequendum* is a court order "used in criminal cases to bring before a court a prisoner to be tried on charges other than those for which the prisoner is currently being confined."   *Habeas Corpus*, BLACK'S LAW DICTIONARY (Bryan A. Garner ed., 10th ed. 2014).   In this regard, the federal *habeas corpus* statute, 28 U.S.C. § 2241, provides: "(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. . . . (c) The writ of habeas corpus shall not extend to a prisoner unless— . . . (5) It is necessary to bring him into court . . . for trial."   28 U.S.C. § 2241(a), (c)(5).   The defendant does not cite any authority that states the United States must obtain a writ of *habeas corpus ad prosequendum* to obtain custody of an individual on pretrial home detention.   The United States could find no case or statute in any federal court suggesting a writ of *habeas corpus ad prosequendum* is required in this circumstance, nor does the defendant

[1] The defendant incorrectly claims federal agents entered his home on the evening of his arrest. While that did not happen, the agents could have lawfully done so:  the federal arrest warrant authorized entry into the defendant's residence to effectuate the arrest.   *See Payton v. New York*, 445 US 573, 603 (1980).

[2] Defense counsel has stated that law enforcement used a helicopter as part of the execution of the arrest warrant.   No helicopter was used by state or federal law enforcement during the arrest and transfer of the defendant.   *See* Ex. 1 ("No helicopter was utilized in the arrest.").

cite any authority for his position that such a writ is necessary here.   Individuals on pretrial home incarceration, like other individuals on a form of pretrial release, may be subject to conditions and supervision.   However, they are not in the custody of a jail or prison.   As such, they are differently situated than pretrial detainees and prisoners, for whom a writ of a *habeas corpus ad prosequendum* is usually obtained.[3]

Even if there were a requirement that the United States obtain a writ of *habeas corpus ad prosequendum*, failure to obtain such a writ would not be a basis for dismissing an indictment. "The exercise of jurisdiction over a prisoner who has violated the law of more than one sovereignty and the priority of prosecution of the prisoner is solely a question of comity between the sovereignties which is not subject to attack by the prisoner." *Derengowski v. U.S. Marshal, Minneapolis Off., Minn. Div.*, 377 F.2d 223, 224 (8th Cir. 1967).   As the Supreme Court has stated:

> One accused of crime has a right to a full and fair trial according to the law of the government whose sovereignty he is alleged to have offended, but he has no more than that.   He should not be permitted to use the machinery of one sovereignty to obstruct his trial in the courts of the other, unless the necessary operation of such machinery prevents his having a fair trial.   He may not complain if one sovereignty waives its strict right to exclusive custody of him for vindication of its laws in order that the other may also subject him to conviction of crime against it.   *In re Andrews*, (D.C.) 236 F. 300; *United States v. Marrin*, (D.C.) 227 F. 314.   Such a waiver is a matter that addresses itself solely to the discretion of the sovereignty

---

3 As a practical matter, requiring a writ of *habeas corpus ad prosequendum* for individuals on pretrial home incarceration would increase the risk they would flee or commit additional crimes. In this district, due to the required process of obtaining governor's clearance after obtaining a writ of *habeas corpus ad prosequendum*, applications for writs of *habeas corpus ad prosequendum* generally request a date of transfer that is 30 days from the date of application.   This would mean an individual who has pending federal charges and has already been charged at the state level would remain on home incarceration, rather than in a state or federal facility, for an additional 30 days after the individual has been charged federally.

making it and of its representatives with power to grant it.

*Ponzi v. Fessenden*, 258 U.S. 254, 260 (1922).   While "the issue of which of two authorities or sovereigns may detain and first proceed to prosecute an individual has significance for the coordination of criminal law at the interface of federal and state systems, numerous decisions have concluded that '(t)he exercise of jurisdiction over a prisoner who has violated the law of more than one sovereignty and the priority of prosecution of the prisoner is solely a question of comity between the sovereignties which is not subject to attack by the prisoner.'"   *Bowman v. Wilson*, 672 F.2d 1145, 1153–54 (3d Cir. 1982) (citing 377 F.2d at 224); *see also Weathers v. Henderson*, 480 F.2d 559, 559 (5th Cir. 1973) (per curiam); *Lindsay v. United States*, 453 F.2d 867, 868 (3d Cir.) (per curiam), *cert. denied*, 406 U.S. 925 (1972); *Joslin v. Moseley*, 420 F.2d 1204, 1206 (10th Cir. 1969); *McDonald v. United States*, 403 F.2d 37, 38 (5th Cir. 1968) (per curiam); *United States ex rel. Brewer v. Maroney*, 315 F.2d 687, 688 (3d Cir. 1963); *Potter v. Ciccone*, 316 F. Supp. 703, 706 (W.D. Mo. 1970).

In *United States v. Horton*, the defendant was taken into custody by West Virginia for a parole violation and later indicted in a federal proceeding.   No. 95–5880, 1997 WL 76063, *1 (4th Cir. Feb. 24, 1997).   The United States received a writ of *habeas corpus ad prosequendum* to secure Horton at a federal arraignment, and afterwards returned Horton to state custody to be tried on his pending state charges.   *Id*. at *1–2.   Although no habeas writ was filed, Horton was returned to federal custody at a later date.   Horton argued that the United States had to obtain a second writ of habeas corpus in order to secure his transfer back to federal custody.   The Fourth Circuit said Horton lacked standing to challenge his transfer: "Although Horton strenuously objects to his second transfer to federal custody because no writ issued, prisoners have no standing

to challenge transfers between sovereigns." *Id*. at *3.

In support of his claim, the defendant cites *United States v. Hubbard*, No. 19-CR-00060-TBR, 2020 U.S. Dist. LEXIS 208210 (W.D. Ky. Nov. 6, 2020).   The defendant's argument in *Hubbard* (which failed) was that there was no federal jurisdiction for the charged offense, escape from federal custody, because at the time of the conduct – i.e., the alleged escape – the defendant was under a writ from state confinement and not in "actual" federal custody.   The facts of *Hubbard*, therefore, are distinct and do not compel dismissal in this case, especially where the Court in *Hubbard* denied the defendant's motion contesting the court's jurisdiction.   *Id*. at *8.

Here, state authorities agreed to make the defendant available for arrest pursuant to the valid federal warrant without a writ.[4]   The defendant has "no standing to challenge" the transfer between state and federal sovereigns, and his Motion to Dismiss on these grounds should be denied.   1997 WL 76063 at *3; *see also Weekes v. Fleming*, 301 F.3d 1175, 1180 n.4 (10th Cir. 2002) ("a defendant does not have standing to "complain of or choose the manner in which each sovereign proceeds against him so long as his constitutional rights in each trial are not violated."); *DeLong v. United States*, 474 F.2d 719, 720 (5th Cir. 1973) ("the prisoner has no standing to attack the agreement between sovereigns and the surrendering sovereign has not thereby waived its right to have the prisoner returned to its custody for trial").

---

[4] The defendant also argues that the government "violated Kentucky State Law by unlawfully seizing and arresting [him] in violation of his conditions of release."   DN 15 at 4.   The defendant does not specify which "Kentucky State Law" he claims the government has violated. Notwithstanding the lack of clarity, the government has violated no laws.   As addressed above, the government conferred with state authorities to facilitate the permissible transfer of the defendant into federal custody in response to a valid arrest warrant.   And the defendant has no standing to challenge it.

### 3.      The Defendant's Speedy Trial Rights Have Not Been Violated

Third, the defendant claims "the Government's actions in unlawfully seizing and arresting Brown while his State charges were pending . . . violates Brown's right to . . . speedy trial."   DN 15 at 3.[5]

The Speedy Trial Act provides that, subject to certain periods of exclusion, the trial of a defendant who has pleaded not guilty to a charge in an information or indictment, "shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant . . . [appears before] the court in which such charge is pending, whichever date last occurs."   18 U.S.C. § 3161(c)(1), (h).   The Act excludes certain periods of time from that seventy-day computation.   18 U.S.C. § 3161(h).   Specifically:

> (A)   delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant;
>
> (B)   delay resulting from trial with respect to other charges against the defendant;
>
> (C)   delay resulting from any interlocutory appeal;
>
> (D)   delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion;
>
> (E)   delay resulting from any proceeding relating to the transfer of a case or the removal of any defendant from another district under the Federal Rules of Criminal Procedure;
>
> (F)   delay resulting from transportation of any defendant from another district, or to and from places of examination or

5 While it is unclear what the exact implication of this argument is – namely, whether the defendant is referring to his right to a speedy trial in the federal case or the state case – we focus our argument on his right to speedy trial in this federal case, as this is the matter over which this Court has jurisdiction.

hospitalization, except that any time consumed in excess of ten days from the date an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable;

(G) delay resulting from consideration by the court of a proposed plea agreement to be entered into by the defendant and the attorney for the Government; and

(H) delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court.

18 U.S.C. § 3161(h)(1).   In the event that "a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h), the information or indictment shall be dismissed on motion of the defendant."   18 U.S.C. § 3162(a)(2).   The defendant carries the burden of proof as to the motion.   *Id*.

The defendant made his initial appearance on April 8, 2022.   That day, the defendant filed a Motion to Dismiss, which tolls the Speedy Trial clock pursuant to 18 U.S.C. § 3161(h)(1)(D). *See* DN 15.   As of the filing of this Response, zero days have run on the Speedy Trial clock. Therefore, no violation of the Speedy Trial Act has occurred, and the defendant's claim should be rejected.

## 4.   Pretrial Detention of the Defendant Is Not Cruel and Unusual Punishment

Fourth, the defendant alleges that federal detention violates the Eighth Amendment's prohibition on "cruel and unusual punishment" where the defendant has mental health issues[6] and

---

[6] To the extent the defendant believes that his purported mental health issues establish a valid basis for dismissing the Indictment against him – he is wrong.   It is well established that neither physical nor mental health issues constitute a legitimate ground to dismiss an indictment.   *United States v. Hudson*, 545 F.2d 724, 725–26 (10th Cir. 1976) (illness of the accused does not afford a legal basis justifying dismissal of an indictment by the court on its own motion); *United States v. Gunter*, No. Crim. 12-394-4, 2013 WL 990437, at *1 (E.D. Pa. Mar. 13, 2013) ("poor state of a defendant's

was released to HIP in state court.[7]   DN 15 at 3-4.

The Eighth Amendment states that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."   U.S. CONST. amend. VIII.   The Bail Reform Act requires a judicial officer to determine whether an arrestee shall be detained. Section 3142(e) provides that "[i]f, after a hearing pursuant to the provisions of subsection (f), the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, he shall order the detention of the person prior to trial."   Section 3142(f) provides the arrestee with procedural safeguards.   He may request the presence of counsel at the detention hearing; he may testify and present witnesses on his behalf, as well as proffer evidence; and he may cross-examine other witnesses appearing at the hearing.   If the judicial officer finds that no conditions of pretrial release can reasonably assure the safety of other persons and the community, he must state his findings of fact in writing, § 3142(i), and support his conclusion with "clear and convincing evidence," § 3142(f).   The arrestee is entitled to a prompt detention hearing, and the maximum length of pretrial detention is limited by the stringent time limitations of the Speedy Trial Act.

---

health, whether physical or mental" is not a basis to dismiss an indictment); *United States v. Goldstein*, 633 F. Supp. 424, 426 (S.D. Fla. 1986) (it "is thus clear that this court does not have the authority to dismiss defendant['s] indictment" for health reasons); *United States v. Mosley*, 500 F. Supp. 601, 605 (N.D.N.Y. 1980) (denying motion to dismiss the indictment based on poor physical health as the court lacked authority for granting the motion).

[7] The defendant claims two state court judges "determined Brown should not be incarcerated prior to trial based on his significant mental health issues."   DN 15 at 4.   No state court made any finding that incarceration would be detrimental to the defendant's health or that he otherwise should not be detained because of his mental health.   The state court ordered that bail be set at $100,000.   The $100,000 bail was paid on behalf of the defendant, and he was released to HIP. Indeed, if others had not posted the defendant's bail, he would have been incarcerated pending trial in the state case.

*See* 18 U.S.C. § 3161 *et seq.*.   The Supreme Court has "repeatedly held that the Government's regulatory interest in community safety can, in appropriate circumstances, outweigh an individual's liberty interest."   *United States v. Salerno*, 481 U.S. 739, 748 (1987).   The Supreme Court has specifically "held that the government may detain mentally unstable individuals who present a danger to the public."   *Id.* (citing *Addington v. Texas*, 441 U.S. 418 (1979)).

The defendant has not identified a single case in which any court has held that the Bail Reform Act is unconstitutional or violates the Eighth Amendment.   To the contrary, the Sixth Circuit and other courts have generally upheld the Act against constitutional challenges.   For instance, in *United States v. Chilingirian*, the Sixth Circuit did "not see any constitutional problems with [the Bail Reform] Act."   280 F.3d 704, 710 (6th Cir. 2002); *see also, e.g.*, *United States v. Perry*, 788 F.2d 100, 111 (3d Cir. 1986), *cert. denied*, 479 U.S. 864 (1986) (federal courts that have addressed the issue have held that there is no absolute right to bail); *United States v. Portes*, 786 F.2d 758, 766 (7th Cir.1985) ("neither the historical evidence nor contemporary fundamental values implicit in the criminal justice system requires recognition of the right to bail as a 'basic human right,' which must then be construed to be of constitutional dimensions") (quoting *United States v. Edwards*, 430. A.2d 1321, 1331 (D.C. 1980)); *United States v. Giangrosso*, 763 F.2d 849, 851 (7th Cir. 1985) (holding that Bail Reform Act would not violate the Eighth Amendment and/or due process guarantees).   As a result, the defendant's Eighth Amendment claim should be rejected.

## **Conclusion**

The defendant's Motion to Dismiss should be denied.

Respectfully submitted,

MICHAEL A. BENNETT                    COREY R. AMUNDSON
United States Attorney                Chief, Public Integrity Section
Western District of Kentucky          Criminal Division, U.S. Department of Justice

*/s/ Amanda E. Gregory*_____        */s/ Jolee Porter*_____
By: Amanda Gregory                    By: Jolee Porter
Assistant United States Attorney      Trial Attorney
717 West Broadway                     1301 New York Ave. NW
Louisville, KY 40202                  Washington, DC 20530
Tel. (310) 869-7503                   Tel. (202) 748-6591
amanda.gregory@usdoj.gov              jolee.porter3@usoj.gov

13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 22, 2022, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to counsel for the defendant.

<u>*s/ Jolee Porter*</u>
Jolee Porter

14