UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
(electronically filed)

UNITED STATES OF AMERICA                                    PLAINTIFF

VS.                                    CRIMINAL ACTION NO. 3:22-cr-00033-BJB

QUINTEZ BROWN                                               DEFENDANT

**DEFENDANT'S MEMORANDUM IN SUPPORT
OF PRETRIAL RELEASE**

Comes the defendant, Quintez Brown, through counsel, and, in response to this Court's

Order (DN 21), offers this Response to the United States' Motion to Revoke Release Order (DN

28). The following arguments are offered in support of the Magistrate's Order granting Mr.

Brown's request for release pending his trial in this matter (DN 23):

A detention hearing was held before the Hon. Colin Lindsay on April 15, 2022. The

hearing was lengthy, with many witnesses for Mr. Brown. The transcript of the hearing is 157

pages long (DN 24). Thirteen pages contain the Magistrate's thorough and careful analysis of the

evidence and arguments presented at the hearing. (Transcript, DN 24, PageID #: 188-200). Mr.

Brown urges this Court to adopt the well-reasoned, persuasive release decision made by Judge

Lindsay.

In an accurate summation of the hearing, Judge Lindsay stated, "[W]ith all due respect, I

believe the United States has conflated the dangerousness of what Mr. Brown is accused of

having done with the dangerousness of him being released." (*Id*. at PageID #: 194). The United

States offered voluminous evidence about the indicted conduct, but very little about any current

dangerousness. After the indicted event, Mr. Brown was taken to Our Lady of Peace Hospital,

where he was inpatient for eight days, and then released to outpatient with intensive daily therapy. In its Motion to Revoke, the United States, oddly, added a "[d]" to the mental health diagnosis Mr. Brown received - a "d" that totally changed the meaning of the diagnosis. "The letter goes on to explain that the psychiatrist 'rule[d] out' schizophrenia, chronic paranoid type as well as 'schizoaffective disorder, bipolar type.' " (Motion to Revoke, DN 28, PageID #: 229). As explained by Dr. Chhibber in the attached exhibit, "The term 'Rule out' is a clinical term noting the diagnosis is provisional. The diagnoses of schizophrenia and schizoaffective disorder both require an observed six-month duration of the symptoms. Such a duration or time-period is typically not completed in the hospital since inpatient stays are short. Therefore, the term 'Rule out' was used in this case in accordance with the standards of the Diagnostic and Statistical Manual (DSM-5)." Schizophrenia has ***not*** been "rule[d] out." That assertion by the United States is blatantly false. Mr. Brown is not a danger to the community at this time because he is under treatment for his mental health conditions. He is medicated and in therapy.

As the testimony at the hearing demonstrated, Mr. Brown was a rising star, extraordinary, compassionate, brilliant, an activist for peace, a real leader. He had a mental health break as a twenty-year-old, which is a typical onset time for psychoses. Mr. Brown's break from his trajectory as a brilliant leader manifested itself when he went missing and was found on a park bench in New York City. Unfortunately, Mr. Brown did not receive the care he needed. At the time of the alleged events, Mr. Brown was still not receiving mental health care. Now, he is. Mr. Brown comes before this Court as a man with a treated mental health condition, and under active monitoring by mental health professionals. The acts alleged to have been committed by Mr. Brown would have been committed by an untreated Mr. Brown – that is not who is before the Court at this time. Other than evidence of the acts allegedly already committed by Mr. Brown,

the United States has not made an argument of current dangerousness to the community. The mental health care Mr. Brown is now receiving has shifted the balance. Mr. Brown, under active mental health care, is not a risk of danger to the community. The United States Probation Office has recommended pre-trial release for Mr. Brown. Mr. Brown is presumed innocent and has met his burden to be released on the conditions that Judge Lindsay found would reasonably guarantee the safety of the community.

As a side note, the United States claimed in a footnote in their Motion that the defense team had failed to provide requested mental health and prescription records to the United States Marshals and had delayed Mr. Brown's mental health treatment through that failure. (DN 28, Page ID#: 230, n. 6). For the record – no request was made by the Marshals to the defense team for records pertaining to Mr. Brown. And further, Gary Skaggs at the Grayson County Detention Center Medical Office confirmed to undersigned counsel that there was no interference, obstacle, or delay in Mr. Brown's medications. Mr. Brown was booked into Grayson County with five medications. He was immediately continued on three of them, and the other two were on a list of medications that require authorization paperwork to be processed by Grayson County before they can be administered. There was no delay other than the necessary delay of obtaining the internal jail authorization paperwork. The accusation made by the United States that the defense had obstructed Mr. Brown's treatment is patently false.

The United States' Motion to Revoke discussed Mr. Brown's brief disappearance to New York City. "The defendant also has some history of erratic behavior. For approximately eleven days in 2021, the defendant left town and went missing shortly after his stepfather died. His disappearance led to a city-wide search by friends and family. Ultimately, the defendant was located in New York. This instance of past conduct shows that he is a poor candidate for release

to the community, even under careful supervision. *The defendant's violent and surprising behavior is the precise type of unpredictable conduct that pretrial detention is meant to prevent*." However, in the case of a bright young man with a very promising future who suddenly has a psychotic break, mental health treatment is designed to prevent "violent and surprising behavior." The relevance of Mr. Brown's psychiatric care is not that he needs to be released to receive care, but rather that the care he has been receiving significantly reduces the risk of any future violence. With the supervision conditions set by Judge Lindsay, including mental health care, Mr. Brown, who is presumed innocent, can be successfully managed in the community. Mr. Brown would also, of course, continue to be subject to unannounced searches of his person and residence at any time, as he was while on home incarceration on his state charges. The extra safeguard of two third-party custodians further ensures the safety of the community.

The Bail Reform Act permits courts to assess a defendant's risk for flight or dangerousness against the backdrop of specific conditions of release it plans to impose. Section 3142(c) provides that where a court is concerned that releasing a person on personal recognizance "will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community," the court may impose conditions of release, including release to a third-party custodian. 18 U.S.C. 3142(c)(B)(i). That custodian must agree to assume supervision and to report any violation of a release condition to the court, if the designated person is able reasonably to assure the judicial officer that the person will appear as required and will not pose a danger to the safety of any other person or the community; 18 U.S.C. 3142. Accordingly, in assessing the four § 3142(g) factors to determine whether a defendant poses a risk of flight or danger, the Court will consider whether he would pose such a

risk if released to home confinement in the custody of a third-party custodian. In Mr. Brown's case, the judge assigned two third-party custodians.

3142(g) Factors:

(1) Mr. Brown concedes that the nature of the offense charged is very serious.

(2) Regarding evidence of dangerousness, the United States relies on evidence of dangerousness at the time of the alleged conduct, but does not bring evidence of dangerousness on the part of Mr. Brown under treatment on the conditions of release ordered by Judge Lindsay.

(3)(A) The characteristics of the defendant in this case present a particularly strong argument for release. He has solid community and family support and he is under the care of a mental health team that would report anything off about his behavior, and two third-party custodians with the same sworn obligation.

(3)(B) Other than the instant offense, Mr. Brown has no criminal history. Mr. Brown was not "on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law."

Mr. Brown will agree to be subjected to the most restrictive conditions of release, and those conditions are spelled out in Judge Lindsay's Order of Release. [DN 22].

In this case, the evidence at the hearing clearly demonstrates that Mr. Brown has substantial, life-long ties to the community, and is not a flight risk. He demonstrated his willingness to face charges against him in the previous state prosecution. The evidence also shows that, while undergoing mental health treatment, Mr. Brown can be successfully managed in the community at his grandmother's house, with minimal risk to the safety of the community, as he was for two months on the state charges. Risk will further be guarded against by the strict

conditions of home confinement, third-party accountability, and mental health care ordered by Judge Lindsay.

In addition, Mr. Brown would call attention to 3142(j), which states: "**Presumption of innocence.** --Nothing in this section shall be construed as modifying or limiting the presumption of innocence."

WHEREFORE, given all the reasons argued at the hearing, and further listed above, Mr. Brown urges the Court to release him on the restrictive conditions listed in Judge Lindsay's Order pending his trial in this matter.

**Respectfully submitted,**


/s/ *Rob Eggert*
ROB EGGERT
600 West Main Street
Suite 200
Louisville, Kentucky 40202
(502) 540-5700


/s/ *Patrick Renn*
PATRICK RENN
600 West Main Street
Suite 100
Louisville, Kentucky 40202
(502) 540-5700


/s/ *Tricia Lister*
TRICIA LISTER
600 West Main Street
Suite 100
Louisville, Kentucky 40202
(502) 540-5700

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 25, 2022, the foregoing notice was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all of the attorneys of record.

/s/   *Rob Eggert*

**ROB EGGERT**