UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                                        PLAINTIFF

vs.                                                         CRIMINAL ACTION NO. 3:22-cr-00033-BJB

QUINTEZ O. BROWN                                                                DEFENDANT

**UNITED STATES' REPLY REGARDING MOTION TO REVOKE RELEASE ORDER**
*Electronically Filed*

The United States hereby replies to the defendant's Response, DN. 34, to the government's Motion to Revoke Release Order pursuant to 18 U.S.C. § 3145(a)(1). DN. 28. In support of bond, the defendant argues that the "United States offered voluminous evidence about the indicted conduct, but very little about any *current* dangerousness." DN 34 at 1 (emphasis added). Just two and a half months ago, on February 14, 2022, the defendant engaged in a premeditated murder attempt of a mayoral candidate because he did not want that candidate to advance in the election. *See* DN 1. To argue that the defendant's calculated and violent conduct does not support a showing of dangerousness is contrary to statute, case law, and logic. Moreover, the defendant's evidence of recent mental health diagnoses and treatment does not refute a showing of dangerousness or the presumption that the defendant should be detained.

First, the defendant ignores that Section 3142 imposes a rebuttable presumption of dangerousness here where the defendant is charged with violating 18 U.S.C. § 924(c) by using and discharging a firearm in furtherance of a crime of violence, to wit, a politically-motivated attempted murder. Accordingly, this Court must presume "that no condition or combination of conditions will reasonably assure [(1)] the appearance of the person as required and [(2)] the safety

1

of the community." 18 U.S.C. § 3142(e)(3)(B). "[T]he presumption of dangerousness . . . represents Congressional findings that certain offenders . . . are likely to continue to engage in criminal conduct undeterred . . ." *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986). By virtue of discharging a firearm in furtherance of a crime of violence, the defendant is the very type of offender that Congress presumes is "likely to continue to engage in criminal conduct." *Id*. Section 3142(g) specifically instructs the Court to consider "the nature and circumstances of the charged offense," here, a premeditated murder attempt. This factor points to instances where "the offense is a crime of violence . . . or involves a . . . firearm," both of which are present in this case. 18 U.S.C. § 3142(g)(1). Thus, both charged offenses fall into categories identified by Congress as those in which the nature and circumstances favor detention.

      The calculated, violent, and potentially fatal nature of the defendant's conduct weighs heavily in favor of detention and should be considered by this Court when assessing the defendant's dangerousness. Courts routinely look to charged offense conduct in assessing the dangerousness of a defendant as well the weight of the evidence of dangerousness. *See United States v. Stone,* 608 F.3d 939, 948 (6th Cir. 2010) ("[N]ature and circumstances of the charges against all defendants weigh in favor of detention" where defendants "demonstrated interest in committing actual, physical violence . . . and several have shown a lack of concern about the likelihood of killing civilians"). Here, the substantial evidence of the defendant's premeditated attempted killing presented by the government in its Motion provides abundant evidence of the defendant's dangerousness. *See United States v. Livingood*, No. 5:21-MJ-5375-MAS, 2021 WL 5918553, at *3 (E.D. Ky. Dec. 15, 2021) (including allegation in criminal complaint in analysis of weight of evidence of dangerousness); *United States v. Taylor*, 449 F. Supp. 3d 668, 673 (E.D. Ky. 2020) (considering "dangerousness nature of the current charge" as part of the weight of the

evidence of dangerousness); *United States v. Johnson*, No. 19-cr-20437-01, 2020 WL 1474397, at *4 (E.D. Mich. Mar. 26, 2020) (considering fact that defendant was "alleged to have possessed several firearms and a significant quantity of methamphetamines in this case" in analyzing weight of the evidence of dangerousness).

Second, evidence of the defendant's recent mental health diagnoses and treatment does not refute his dangerousness to his victim, himself, and the community. In support of the argument that the defendant is no longer a danger despite attempting to kill a political candidate two and a half months ago, the defendant submitted letters from mental health providers. One letter from Kellye Singletary, MD, dated April 11, 2022, states the defendant was seen on February 18, 2022, and "diagnosed with bipolar disorder, type 1 most recent episode mixed and Anxiety Disorder, unspecified with some features of Post-traumatic Stress Disorder." Def. Ex. 5. The letter notes that the defendant had "ruminating thoughts of 'not wanting to be here'" and "self-harm" on February 25, 2022. *Id*. Another letter dated April 12, 2022, states the defendant was seen "on an inpatient basis" at UofL Health Peace Hospital "from February 27, 2022, to March 7, 2022," and diagnosed with "major depressive disorder, recurrent, severe, with psychotic features." Def. Ex. 4. The defendant's response indicates that he could still be diagnosed with schizophrenia or schizoaffective disorder at a later date. DN 34 at 2.

The defendant asserts that he "is not a danger to the community at this time because he is under treatment for his mental health conditions. He is medicated and in therapy."[1] *Id*. This conclusion, however, relies on several assumptions that are not supported by the evidence,

---

[1] The defendant's continued reliance on his mental health in support of his request for release indicates that he is waiving any psychotherapist-patient privilege by putting his mental health records "at issue." *See Simon v. Cook*, 261 F. App'x 873, 886 (6th Cir. 2008) ("[T]his circuit has held that placing one's mental health at issue constitutes waiver of the [psychotherapist-patient] privilege.").

3

including the letters submitted by the defendant. The defense letters provide limited information on how the different diagnoses were made. The letters provide no information on whether tests were administered to determine if the defendant is malingering,[2] and if so, what the results were. The letters do not express the opinion that the defendant was suffering from these disorders at the time of the offense or that a mental health disorder caused the defendant to engage in his premeditated, violent, and deadly conduct. Finally, and most importantly, the letters do not say that treatment through medication is going to prevent the defendant from being a danger to the victim in this case, himself, or the community. Indeed, the government's evidence shows that the defendant's violent conduct followed careful planning, rather than some sudden "snap." The evidence indicates, therefore, that mental health treatment alone will not necessarily protect the victim and community from the defendant.

The defendant highlights that his actual mental health diagnosis is still in flux. *See* DN 34 at 2. The defendant was seen by a mental health professional on February 18, 2022, given a diagnosis, started on medication, and then a week later he was a danger to himself, was admitted to in-patient treatment, and received a different diagnosis. Def. Exs. 4 and 5. The defendant has admitted that two months is not enough time to obtain a definitive diagnosis. DN 34 at 2 ("The diagnoses of schizophrenia and schizoaffective disorder both require an observed six-month duration of the symptoms"). It follows that two months is not enough time to finalize effective treatment to ensure the defendant is not a danger to his victim or the community, even assuming treatment could prevent a premeditated murder attempt.[3] Besides, the defendant fails to even

---

[2] Malingering "occurs in situations where an individual feigns the presence, or severity, of psychological symptoms as a result of an identifiable external incentive." *United States v. Wilson*, 402 F. App'x 69, 71 n.3 (6th Cir. 2010) (internal citation omitted).
[3] As noted in the government's Motion, if the defendant is mentally unstable, correctional confinement will provide a place with access to medication and mental healthcare without the

address the unaccounted-for gun that he bought in January 2022, and took to his victim's house on February 13, 2022. As described in the government's Motion, the defendant is a danger to his victim, himself, and the community. The defendant has not overcome the statutory presumption in favor of detention and should be detained. *See* 18 U.S.C. § 3142(e)(3)(B).

## Conclusion

For the reasons presented here and in the government's Motion, DN 28, the United States respectfully requests that the Court enter an Order revoking the order of release and directing the detention of the defendant pending disposition of the criminal action against him in this jurisdiction.

Respectfully submitted,

| | |
|---|---|
| MICHAEL A. BENNETT | COREY R. AMUNDSON |
| United States Attorney | Chief, Public Integrity Section |
| Western District of Kentucky | Criminal Division, U.S. Department of Justice |
| | |
| */s/ Amanda E. Gregory* | */s/ Jolee Porter* |
| By: Amanda Gregory | By: Jolee Porter |
| Assistant United States Attorney | Trial Attorney |
| 717 West Broadway | 1301 New York Ave. NW |
| Louisville, KY 40202 | Washington, DC 20530 |
| Tel. (310) 869-7503 | Tel. (202) 748-6591 |
| amanda.gregory@usdoj.gov | jolee.porter3@usoj.gov |

---

added risk of him committing another violent attack. The defendant does not need to be released to receive mental health treatment, and the community is safer with him detained.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was sent by electronic transmission through the Court's ECF system on April 26, 2022, which generated an electronic copy that was emailed to counsel for the defendant.

<u>/s/ Jolee Porter</u>
Jolee Porter
Trial Attorney
U.S. Department of Justice
Public Integrity Section