```
 1                    UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF KENTUCKY
 2                       LOUISVILLE DIVISION

 3
     UNITED STATES OF AMERICA,      )     Case No. 3:22-CR-00033-BJB
 4                                  )
             Plaintiff,             )
 5                                  )
     v.                             )
 6                                  )
     QUINTEZ O. BROWN,              )
 7                                  )     April 7, 2022
             Defendant.            )      Louisville, Kentucky
 8

 9                            *  *  *  *  *

10                  TRANSCRIPT OF INITIAL APPEARANCE
                     BEFORE HONORABLE COLIN H. LINDSAY
11                   UNITED STATES MAGISTRATE JUDGE

12                            *  *  *  *  *

13   APPEARANCES:

14   For United States:       Amanda E. Gregory
                              U.S. Attorney's Office
15                            717 West Broadway
                              Louisville, KY 40202
16
                              Jolee Porter
17                            Department of Justice
                              Public Integrity Section
18                            1301 New York Avenue NW
                              Washington, DC 20530
19
     Transcriber:             Dena Legg, RDR, CRR, CCR-KY
20                            Official Court Reporter
                              232 U. S. Courthouse
21                            Louisville, KY 40202

22   [Defendant present.]

23

24       Proceedings recorded by digital recording.  Transcript
     produced by computer from audio recording that the Court
25   provided to transcriber.
```

```
1    APPEARANCES (CONTINUED):

2    For Defendant:          Rob Eggert
                             600 West Main Street, Suite 100
3                            Louisville, KY 40202

4                            Patrick J. Renn
                             Smith & Helman
5                            600 West Main Street, Suite 100
                             Louisville, KY 40202
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          (Begin proceedings via videoconference.)

2               DEPUTY CLERK:  3:22-CR-33, United States of America

3     versus Quintez Brown for initial appearance and arraignment on a

4     sealed indictment.

5               MS. GREGORY:  Amanda Gregory for the United States.

6     Also present on the call is my co-counsel, Jolee Porter.  At

7     this time we would move to unseal the indictment.

8               THE COURT:  All right.  And I see Mr. Eggert,

9     Mr. Renn.  You-all are here as retained counsel for the

10    defendant; correct?

11              MR. EGGERT:  Yes, Your Honor.  Rob Eggert and Patrick

12    Renn, and we're here for Quintez Brown.

13              MR. RENN:  Good afternoon, Your Honor.

14              THE COURT:  All right.  Good afternoon.

15         Any objection to the motion to unseal?

16              MR. EGGERT:  No.

17              THE COURT:  All right.  So I'll order that to be

18    unsealed.

19         Let me say preliminarily to spectators, including press, but

20    really anyone other than counsel who are participating in the

21    call a couple of things.  Please remember that although we're

22    doing this via Zoom, we're still in court; and so the usual

23    rules apply.  No recording, no photography, and no questions or

24    conversation from the audience.

25         I will ask -- I see most people have done so already.  I

1    will ask, other than counsel and Mr. Brown, if you would please

2    mute your line.  We get a lot of audio feedback when people do

3    not have their lines muted.  Does anybody need help finding that

4    or figuring out how to do that on Zoom?

5        All right.  Mr. Wilson, I don't know if you're there.  I see

6    a screen with your name on it, and your line does not appear to

7    be muted.  Can you mute your line, please.

8        All right.  Theresa, can you take care of that, please.

9            DEPUTY CLERK:  Yes, sir.

10           THE COURT:  All right.  So, Mr. Eggert or Mr. Renn,

11   whoever is going to speak primarily or initially for you-all, do

12   you-all consent to having today's initial appearance and

13   arraignment via videoconference?

14           MR. EGGERT:  No, Your Honor.  We'd ask for a personal

15   appearance, and that would be our motion, for a personal

16   appearance.  In addition, Your Honor --

17           THE COURT:  All right.

18           MR. EGGERT:  -- we would make a motion -- we believe

19   that the court does not have jurisdiction, that the federal

20   authorities did not take our client, as required in accordance

21   with the rules, from state custody.  And so we would submit that

22   Your Honor does not have jurisdiction.  So we do not consent to

23   a -- to any kind of Zoom hearing, and we'd ask for a personal

24   appearance.

25           THE COURT:  All right.  So I want to understand the

1    extent to which you are coupling those two things.  First of

2    all, the rules -- now, I haven't looked at any of our general

3    orders again today, but certainly the rules of criminal

4    procedure allow for videoconferencing if the defendant consents.

5        As I've made it clear to -- I don't recall whether I've made

6    it clear to you-all in particular, but as I've made clear to

7    various lawyers in criminal proceedings, I'm more than happy to

8    do any proceeding in person if the defendant does not consent.

9    So I'm happy to have this in person.

10            MR. EGGERT:  That's -- yes, thank you.

11            THE COURT:  So is -- and going back to that again --

12   I'm not trying to be picky about how you phrased it, Mr. Eggert,

13   but do you have a problem with jurisdiction beyond Zoom, or if

14   we simply set this for an in-person proceeding tomorrow, does

15   that take care of that issue?

16            MR. EGGERT:  No, it doesn't take care of the issue,

17   Judge.  We would move for production of the writ of habeas

18   corpus ad prosequendum that I presume they obtained to attain

19   Mr. Brown before the court.  So we would move for their

20   production -- for that production.  If they don't have it, we

21   will continue to challenge the jurisdiction of the court.

22            MS. GREGORY:  We dot not have a writ, but we consulted

23   with the state, and they said we would not need one.

24            MR. EGGERT:  Well, the states's not the authority.

25   Anyway, we will file a motion to dismiss.  We don't concede

1    jurisdiction.  In fact, we submit the court does not have

2    jurisdiction.  We do ask for a personal appearance.

3        And, Your Honor, for the record, we have significant -- very

4    real concerns.  We believe that this prosecution of our client,

5    Quintez Brown, is politically motivated and racially motivated,

6    and we'd ask for every single thing in this case to be in

7    person.

8            THE COURT:  All right.  Well, as to your broader point

9    about the motivation for the prosecution, that's for another

10   time.  I don't know whether it might also be for another judge,

11   but it's certainly for another time.  And it's not necessary for

12   me or anyone else to agree with that in order to agree that

13   we'll have everything you want to have in person in person.  So

14   we'll plan on having in-person going forward.

15       I will point out that it would have been perfectly fine by

16   me if we had this proceeding we're having right now -- if we had

17   had it in person, but nobody requested that we do so.  And,

18   therefore, we did not make arrangements for the Marshals Service

19   to bring Mr. Brown to the courthouse in Louisville.

20           MR. EGGERT:  Understood, Judge, but please note that

21   we had no idea that Mr. Brown was gonna be taken from his

22   grandmother's home and multiple agents were gonna go there.  We

23   understood there was a helicopter there.  We get -- received no

24   notice of this until the family called us last night.  So we've

25   been scrambling ever since in the morning 'cause he was at one

7

1    home -- sitting at home and then federal agents are taking him

2    away.  So the court has always said we can have in-person.  We

3    appreciate that, but we had -- we had zero notice that federal

4    authorities were gonna do this.

5             THE COURT:  Understood.  And so let me go back, then,

6    to the issue of tomorrow's proceeding.  I don't know that

7    there's anything in the rules or at least in Rule 5 or Rule 10

8    with respect to the arraignment that would cover this

9    eventuality of the jurisdiction being challenged.  So I have --

10   there's an open question in my mind as to what the court has to

11   do, but in the -- in terms of figuring that out, I would like to

12   know what your position is and what the United States' position

13   is on what we should do.  And more specifically, I mean should

14   we have an initial appearance in a case in which the

15   jurisdiction is being challenged?

16            MR. RENN:  Your Honor, in this case here, Mr. Brown

17   clearly was serving a sentence under state court, and a writ

18   would be required in order to get him out of state custody into

19   federal custody.

20      Now, we just heard from the prosecutor that -- she said

21   apparently they communicated with some unknown person in the

22   state asking that they get permission.  Again, I don't know who

23   could give that permission and certainly how they could do it

24   out of the presence of the judge who had him released on terms

25   of home incarceration.  So he was certainly still under a

1    judge's authority in the state court system, and somehow he was

2    taken from his custody in state court and brought here into

3    federal custody.

4        Obviously, under 5(f) the Court's now required to remind the

5    Government of its obligations under *Brady* and *Giglio*, and in

6    this case here we certainly think that's gonna come in as

7    something exculpatory, how it is that he was taken and who gave

8    this authority for the federal government to take him from state

9    custody and bring him into federal custody.

10       So we would ask the court, despite our objections to going

11   forward with the video proceeding under 5(g), but under 5(f) to

12   at least remind the Government of its obligation and then, more

13   importantly, any and all evidence to be preserved.  And this

14   means rough notes of anybody.  This means reports of state

15   agents, of the federal agents that may have participated.  To

16   the extent there's any warrants, that those warrants all be

17   preserved because I think every bit of this evidence is gonna

18   come into play in this case.  And we are requesting that the

19   court enter that order to preserve all evidence and have the

20   Government be reminded of its duties to preserve that evidence,

21   especially exculpatory evidence at this time.

22           THE COURT:  Theresa, could you put me and counsel in a

23   breakout room, please.

24           DEPUTY CLERK:  Yes, Judge.

25       (Begin breakout proceedings with Ms. Gregory, Mr. Eggert,

1   and Mr. Renn.)

2          THE COURT:  All right.  Thank you-all.

3      So this is just like a sidebar.  I wanted this on the

4   record, but I didn't want to -- I just didn't want to do this in

5   front of everybody if it wasn't necessary.

6      So, listen, maybe I'm missing something, but I know the

7   press is here.  I know this is a high-profile case.  I just need

8   an answer to some basic questions.  All right?  There is no

9   point in making your argument -- making your motion to dismiss

10  argument.  I'm not gonna rule on it.  You guys know that.

11     And the question I asked Rob that neither one of you

12  answered is are we still having an initial appearance or are we

13  not?  Does that get tabled?  I didn't say please advance the

14  merits and let's make sure we mention race a couple of times.  I

15  mean, are we having an initial appearance or are we not?

16     And let me say this:  What strikes me as a totally

17  unworkable answer is, "No, we don't do any of the initial

18  appearance.  That's got to be done in person," but we go ahead

19  and warn Amanda Gregory of her obligations.  That we can do, you

20  know, because somehow --

21          MR. RENN:  Your Honor --

22          THE COURT:  -- that lives all by itself outside of --

23  I mean, that's not part of the rule.

24          MR. RENN:  Your Honor, the most important thing here

25  is we don't want to consent to jurisdiction to the extent the

 1    court does not have jurisdiction.

 2        Again, I would cite this case -- we did do preliminary

 3    research.  Again, we just got notice of this last night -- but

 4    *United States v. Hubbard*, 2020 U.S. District Lexis 208210.  And,

 5    basically, that says that the writ is the appropriate way to get

 6    somebody who is in state custody into federal custody.

 7            THE COURT:  All right.  Pat, you're again ignoring

 8    what I said.  I'm not gonna rule on that.  You can have the best

 9    case for dismissal that you've ever had, and you could convince

10    me utterly that it should be granted and that I should order,

11    you know, Amanda Gregory to be publicly reprimanded in the well

12    of the courthouse.  It wouldn't do any good because I'm not

13    gonna rule on that motion.  Judge Hale or whoever the district

14    judge is.

15        I just need to know what we're doing.  Are we having -- what

16    I -- here's what I don't want to do.  We've already gotten 25

17    people involved in this, all right, or approximately, however

18    many people are on the screen.  I mean, I don't want to have 25

19    people in the courtroom tomorrow and spend 20 minutes at the end

20    of which -- or an hour or three minutes, for that matter, at the

21    end of which we decide that we shouldn't have an initial

22    appearance.

23        So I'm just trying to figure out are we having an initial

24    appearance today, or do you-all need to file a motion?  And do

25    we need to rule on that?  You know, I read the rule as saying,

1    you know -- and I can't remember now whether it's immediately or

2    forthwith or as soon as possible, but, you know, these things

3    need to happen right away.  I don't see anything in the rule

4    about this, but I didn't know this was coming.  So I haven't

5    done any preliminary research on it.

6         So that's my only question at this point is what -- when I

7    say "What are we doing?" I don't mean that like a frustrated

8    parent.  I mean, literally, what are we doing?  What proceeding

9    are we having today?  What proceeding are we gonna have

10   tomorrow?

11          MR. RENN:  Well, if you would feel comfortable asking

12   this or answering this, Ms. Gregory, by what authority was he

13   brought here?

14          THE COURT:  No.

15          MR. RENN:  Okay.

16          THE COURT:  I'm not comfortable with this because I --

17   listen, this case is just as important as any other case I have,

18   but it's not any more important than any other case I have.  And

19   I'm not gonna take time to do this because it's a total waste of

20   my time because I'm not gonna rule on it, and it's a total waste

21   of your-all's time to do it in front of me because I'm not gonna

22   rule on it.

23        So y'all figure that out, file a motion.  Hey, if the answer

24   is we shouldn't have an initial appearance.  We should have a

25   hearing tomorrow.  Maybe Judge Hale wants me to do an R&R,

 1    whatever.  I'm not trying to avoid it, but I do need to know

 2    what kind of proceeding we are having.

 3            MR. EGGERT:  Your Honor, just to go back, when you

 4    mentioned the press being here -- what we will do is we'll file

 5    a motion to dismiss today.  That's what we'll do.  All right?

 6    And that's what we'll do is we'll file it this afternoon.

 7        When you mention the press being here, this has nothing to

 8    do with the press.  Judge, this is -- you understand, we took --

 9    we spent an extraordinary amount of time getting this man mental

10    health treatment.

11        I wrote a letter to Ms. Gregory and the U. S. Attorney.

12    They never even answered, and then they pluck our guy out.  So

13    this has nothing to do with the -- with the press, what I'm

14    saying today and what I've said in open court, zero.  All right?

15    I said it without any press here.  I said it in a letter.  So

16    that has nothing to do with it.

17        Regarding what you're saying on this motion to dismiss,

18    we'll go ahead and we'll file the motion to dismiss today, and

19    we'll be happy to be heard tomorrow morning.

20            THE COURT:  Okay.  So the question -- first of all, as

21    to the press, all I was trying to do was show you a little bit

22    of an exit ramp there.  I wasn't trying to accuse you of

23    anything.  What I was trying to say is I get it.  All right?

24    You have to not only do your job, but you have to appear to be

25    doing your job.  I'm just saying that's why I came into a

1    breakout room because I didn't want to make it a big argument.

2    You know, I didn't want to make a public spectacle out of this

3    part.  All right?  That's all.

4        Secondly, I need to know what your-all's position is, not

5    what you're willing to do, not what you feel like I've cornered

6    you into doing.  I need to know what your position is as to

7    whether we are supposed to do an initial appearance in a

8    situation where there is a motion to -- where there is about to

9    be -- there's been an oral motion to dismiss and that is going

10   to be supplemented, or however you want to put it, with a

11   written, and I still haven't heard anybody tell me that.

12              MR. EGGERT:  Judge, if Mr. Renn and I could have a 60-

13   second recess.

14              THE COURT:  Take as long as you want.

15       Let me ask you this -- well, I'm trying to figure out what's

16   the best or -- either the least complicating or the -- so, yeah,

17   Theresa, would you open another breakout room, put Mr. --

18              MR. EGGERT:  We're right here, Judge.

19              THE COURT:  Oh, are you guys physically in the same

20   place?

21              MR. EGGERT:  We're just right across the hall.

22              THE COURT:  Here, do this:  Just -- we'll be on the

23   safe side.  Mute your line.  Even if you think you're stepping

24   away from the computer, I don't want to accidentally overhear

25   anything.  Mute your line and you can come back in here -- just

1    come back to your computer and unmute when you're ready.

2         (Mr. Eggert and Mr. Renn conferring off the record.)

3              THE COURT:  All right.  Ms. Gregory, I'm just going to

4    stop my video, and you will also be here.

5         [Inaudible.]

6              THE COURT:  Thank you.

7         (After a recess, breakout proceedings resumed with

8    Ms. Gregory, Mr. Eggert, and Mr. Renn.)

9              THE COURT:  All right.  So where do we stand,

10   gentlemen?

11             MR. EGGERT:  Your Honor, we would ask for an initial

12   appearance tomorrow.  We will file -- our client's in custody,

13   in jail, obviously.  So we have an interest in having this

14   initial appearance tomorrow in person.

15        We will subsequently file our motion to dismiss.  And I

16   think Mr. Renn's motions were made, as required by rule, at the

17   first appearance or as suggested by the rules.  So all those

18   motions still stand, exculpatory evidence and every other one

19   that he filed.

20             MR. RENN:  Your Honor, that's correct.  Under Rule

21   (f)(1) of Rule 5, it says, "In all criminal proceedings, on the

22   first scheduled court date when both the prosecutor and defense

23   counsel are present, the court shall issue an oral or written

24   order."  So this is the first scheduled court date.  So --

25   excuse me -- that's why I requested the admonition and the

1    reminder to the prosecutor.

2         And then as another aside, Your Honor -- so that we don't

3    get in here and have any surprises -- we have previously

4    discussed with the court about our position that the pretrial

5    services officers should not be meeting with our clients without

6    an attorney present.  And we would request to be present with

7    our client physically when he is interviewed by probation, and

8    hopefully the probation officer likewise would be present.

9              THE COURT:  You lost me right there at the end.  Oh,

10   you mean that the probation officer would be present in person,

11   as opposed to doing it via Zoom?

12             MR. RENN:  Yes, Your Honor.  I believe it would be

13   Ms. Waddle.

14             THE COURT:  Right.  Didn't -- hasn't Ms. Waddle

15   already offered to one of you to -- or try to -- I don't want to

16   say try --

17             MR. RENN:  Yes.

18             THE COURT:  -- like you-all didn't cooperate, but

19   hasn't she already initiated some working out of the terms of

20   the interview with you-all?

21             MR. RENN:  Your Honor, she has.  Very much appreciate

22   that.  And, again, she did reach out to Mr. Eggert.  I have

23   worked on this myself, but I guess the request that Mr. Eggert

24   was talking about here this morning and shared it with me and --

25   again, so that we don't have any other further delays or

1    interruptions is that we want to be present not just on the Zoom

2    with, you know, Mr. Brown but also would request that Ms. Waddle

3    likewise -- we can come down to the court early and do it there

4    at the jail or in the courtroom, whatever the court would like.

5               THE COURT:  Yeah.  Well, certainly in terms of

6    your-all's ability to meet with your client in person, I don't

7    know that there's anything I need to say or do about that.  If

8    you-all want to meet with him in person, I think you ought to be

9    able to.

10       To the extent that -- I don't know if the marshals have a

11   particular policy that they're using right now the way some of

12   the jails have.  Do either one of you know of an issue or

13   problem with that, that the marshals -- in other words, is this

14   something that the Marshals Service won't do unless they're

15   ordered to do it?

16               MR. RENN:  I don't know.  Go ahead, Mr. Eggert.  I'm

17   sorry.

18               MR. EGGERT:  No, I was gonna say, Judge, but we want

19   the -- to be present personally when Ms. Waddle does her

20   interview.  That's -- it's not just that we want our client --

21               THE COURT:  I understand, yeah.  I was speaking too

22   loosely.  Yeah, I understand.

23       Now, as to whether Ms. Waddle participates in -- Officer

24   Waddle participates in person, I'm not inclined on -- at least

25   not without some sort of authority to order that she do so.  I

1   certainly will issue any order that I would need to that would

2   facilitate or allow, if it's not otherwise going to be allowed

3   as a matter of course, you-all to be present with your client

4   during the interview, but I don't know of any authority that I

5   would have or -- you know, I don't know what the standard would

6   be if I were weighing a motion to order the probation -- U.S.

7   Probation to conduct an interview in person as opposed to via

8   videoconference, having never --

9        [Overlapping speakers.]

10            MR. EGGERT:  We'll discuss that.

11            THE COURT:  -- before.

12            MR. EGGERT:  We'll discuss that with Ms. Waddle

13   because, obviously, I would expect probably she'll be here

14   tomorrow.  We know we'll be here tomorrow.  Mr. Brown will be

15   here tomorrow so --

16            THE COURT:  Yeah, yeah, and it may be that there's no

17   issue whatsoever.  She'll say, "Sure.  I'm gonna be on the

18   fourth floor.  I'll come downstairs."

19        Okay.  So let me back up a -- oh, okay.  Mr. Renn,

20   obviously, I know it's part of Rule 5, but what specifically

21   were you looking at when you were talking about the first

22   scheduled court appearance?

23            MR. RENN:  Your Honor, it's Rule 5, subsection (f).

24            THE COURT:  Right.

25            MR. RENN:  And, again, it speaks to the first

1    scheduled court date.

2         THE COURT:  Right.  Yeah, and I don't want to make a

3    mountain out of a molehill.  I mean, obviously, it's an

4    admonition I'm required to give and I'm going to give.  The only

5    extraordinarily minor question is when.

6      But, you know, looking at it -- although it's all nested

7    under initial appearance, you know, each of these paragraphs,

8    you know, lives and breathes on its own and sub (f) doesn't say

9    anything about an initial appearance.  It speaks, as you say,

10   only of the first scheduled court date, and that is today, even

11   if we're limited in scope in terms of what we're doing today.

12   So I think you're right about that.

13     Ms. Gregory, do you -- it would surprise me somewhat, but

14   rather than issuing spoiler alerts, let me just ask you.  Do you

15   have a position on when that admonition ought to be given?

16        MS. GREGORY:  No, Your Honor.  I'm happy to receive it

17   now.

18        THE COURT:  Okay.  All right.  So we'll do that.

19   We'll do that in open court just because that's the way we would

20   normally do it.

21     So hang on for just a sec, please.  And I don't mean I'm

22   putting you on hold or something.  I just want to look at

23   something for a second.

24     So, again, under the same heading of not making a mountain

25   out of a molehill, let me just ask you if we're all in agreement

1   on this because we're going to do the initial -- you know, the

2   balance of the initial appearance or all of the initial

3   appearance in person tomorrow -- and there is one thing that we

4   need -- is 1:00 workable for you-all?

5          MR. RENN:  Yes, Your Honor.

6          MR. EGGERT:  Yes, Your Honor.

7          MS. GREGORY:  Yes, Your Honor.

8          MR. EGGERT:  Yes.

9          THE COURT:  Okay.  We've got one thing we need to work

10  around, and it's -- as I said earlier, it's no more or less

11  important than this case.  It's just one where we already have a

12  translator/interpreter scheduled.  So we'd prefer not to have to

13  move that one.

14     So there's a motion, essentially, to have this initial

15  appearance in person.  I assume there's no objection from the

16  United States on that.

17         MS. GREGORY:  No, Your Honor.

18         THE COURT:  Okay.  So we'll have it in person.  And so

19  everything else that we would normally cover at the first

20  appearance -- but only because the first appearance is typically

21  the initial appearance -- is give Mr. Brown's rights, the status

22  between you-all are retained counsel, going over the charges,

23  all of that can happen tomorrow.  Are we in agreement in that?

24         MS. GREGORY:  Yes, Your Honor.

25         MR. RENN:  Yes, Your Honor.

1            MR. EGGERT:  Yes.

2            THE COURT:  All right.  Now, I want to just go over

3    one thing, just in case there's any lingering doubt about this.

4    With respect to the motion to dismiss -- really, I guess it's

5    two things.

6        Number one, I want you-all just to understand, just as

7    counsel, you know, as people I see and will see and will

8    continue to see, I'm happy to do whatever I need to do on that.

9    All right?  I don't -- I'm not interested in -- or interested in

10    or attempting to avoid any of it, but a motion to dismiss, to

11    the best of my knowledge, is reserved to the discretion of the

12    trial judge, in other words, the district judge.  So I don't --

13    I don't think I would have authority to grant it.  I think it's

14    very unlikely -- although it would certainly be allowed and

15    there would be nothing out of order about it, but I think it

16    would be unlikely for Judge Hale to refer that to me for an R&R.

17        So I just want you-all to know, as I say, as counsel, as

18    individuals, that's what I mean when I say we're wasting our

19    time on this.  It's not because I've got a tee time.  All right?

20    It's because I think it's outside my -- outside the sphere of my

21    authority; and so I don't think it's helping you-all any more

22    than it's helping me.

23        And in terms of when you-all are heard on that, I think --

24    at some point, Mr. Eggert, you may have said something

25    indicating you'd like to be heard on that tomorrow.  I can't

1    make any promises about that.  If Judge Hale wants me to -- if

2    he gives me the authority to hear an argument, I'll hear it.  If

3    he doesn't, it will be up to him when he hears it.

4         MR. RENN:  Your Honor, just so we do have a clean

5    record on this, Rule 12, subsection (b)(2), states that a motion

6    that the court lacks jurisdiction may be made at any time while

7    the case is pending.

8         So, obviously, there's -- the case is pending now that he's

9    been arrested.  He's now been brought before the court.  So it

10   may very well be premature, and the court is probably right that

11   it would not be a motion that you would be able to hear, but we

12   could certainly file the motion orally.  And as Mr. Eggert said,

13   we'll follow up with a written motion here today.

14        THE COURT:  Just in -- you know, maybe I'm beating a

15   dead horse, but I'm not saying it's premature.  I'm not saying

16   it's early.  I'm not saying you shouldn't bring it to the

17   court's attention.  I'm just saying that I personally -- as the

18   magistrate judge assigned to the case, I do not think I have the

19   authority to rule on it.

20        MR. RENN:  Yes, sir.

21        THE COURT:  By all means, you know, that motion can

22   and should be made whenever you want to make it.

23        MR. RENN:  Yes, sir.

24        THE COURT:  Okay.  So, Ms. Gregory, anything -- I've

25   heard primarily -- been asking questions primarily of defense

1    counsel.  Anything that you need to say about any of these

2    issues that we've been discussing?

3              MS. GREGORY:  No, Your Honor.

4         (End of breakout conference.)

5              THE COURT:  All right.  Thank you-all.  I appreciate

6    everybody's patience.  For those of you who were not in that

7    breakout room, that was an extended and Zoom version of a

8    sidebar, and there were some issues that I thought were more

9    appropriate to discuss just with counsel.

10        Mr. Renn, Mr. Eggert, you-all obviously have full right and

11   discretion to discuss with your client anything and everything

12   we discussed in the breakout room.

13        All right.  So because Mr. Brown's lawyers have requested

14   that the balance of the initial appearance be done in person, we

15   are going to schedule that for tomorrow at 1:00 p.m.  We'll

16   direct the Marshals Service to bring Mr. Brown up.

17        And, Mr. Renn and Mr. Eggert, I'll leave it to you-all to

18   coordinate with the Marshals Service and with probation about

19   any interview, and specifically what I mean is in terms of a

20   timing of Mr. Brown's arrival here in Louisville.  I'll let

21   you-all coordinate with the Marshals Service on that front.

22        So the one aspect that we sometimes would cover in the

23   initial and sometimes we cover at a later time, I will remind

24   the prosecution of its obligations under *Brady v. Maryland* and

25   related cases.  As Mr. Renn pointed out correctly, Rule 5 --

1    when it comes to that admonition, Rule 5 speaks of the first

2    scheduled court appearance, as opposed to -- or first scheduled

3    court date, as opposed to making specific reference to the

4    initial appearance.

5        So despite the fact that the initial appearance will happen

6    tomorrow, I will remind the United States now, under *Brady v.*

7    *Maryland* and related cases, to produce exculpatory evidence to

8    the defense.  Any failure to do so may lead to sanctions of the

9    United States, limitations on the use of or exclusion of the

10   evidence, or dismissal of these charges.

11       So [inaudible] as to the initial, but, Mr. Renn and

12   Mr. Eggert, for efficiency sake -- oh, I'm sorry.  I'm reminding

13   myself of one other thing that I wanted to say, and that is

14   the -- we're doing the initial appearance notwithstanding the

15   forthcoming motion to dismiss because I think there's agreement

16   amongst the prosecution, defense, and the court that there's

17   nothing in the rules that delays the court's obligation to

18   conduct the initial and other preliminary proceedings even if

19   there is a motion that is either going to be filed or has been

20   already made.

21       And so I would note for the record that having the initial

22   and the arraignment and any other preliminary thing we may do

23   would be without prejudice to, without waiver by the defense of

24   any motion to dismiss or any grounds for that motion.

25       So the more specific question I was going to ask Mr. Renn

1    and Mr. Eggert, is there any reason not to do the arraignment

2    tomorrow as well as the initial appearance?

3              MR. RENN:  No, Your Honor.

4              MR. EGGERT:  No, we can proceed with the arraignment.

5              THE COURT:  All right.  And let me skip ahead for --

6    just for scheduling purposes.  Ms. Gregory, is the United States

7    going to be seeking detention of Mr. Brown?

8              MS. GREGORY:  Yes, Your Honor, we will be seeking

9    detention pursuant to (f)(1)(A) -- 3142(f)(1)(A) and

10   3142(f)(1)(B).  He has been charged with a crime of violence,

11   and the maximum -- he has been charged with other crimes where

12   the maximum sentence is life.

13             THE COURT:  All right.  And is there any reason why

14   the United States would not be prepared to argue that motion

15   tomorrow?

16             MS. GREGORY:  No, Your Honor.  We can proceed

17   tomorrow.

18             THE COURT:  Okay.

19             MR. EGGERT:  Judge, we're gonna have -- we do not want

20   to have that detention hearing tomorrow.  In fact, we were gonna

21   ask that a detention hearing -- we would waive the rule and ask

22   for a week from Friday.

23        Our client has been in custody -- has been on home

24   incarceration.  He's undergoing psychiatric treatment.  He's on

25   medications.  He's gotten medical help, and we have evidence

1    that we want to present to the court at the detention hearing.

2    So we do not want that hearing tomorrow.  We'd ask that it be

3    for a week from tomorrow and to release Mr. Brown, who of course

4    was out of custody at home and under psychiatric care when

5    federal authorities took him out of the house in his pajamas.

6              THE COURT:  Well, there are a couple of things there.

7    Absent -- well, take the easy part first.  If you don't want to

8    have it tomorrow, I'm not gonna try to rush that.  If you want

9    to have it a week from Friday, that's totally fine.

10             MR. EGGERT:  Thank you.

11             THE COURT:  It's your right.  I just wanted to ask

12   you-all one at a time.

13         As to releasing Mr. Brown, certainly the anticipation would

14   be that Mr. Brown would remain in custody until such time as

15   there is a detention hearing.  So if the defense is seeking any

16   extraordinary release in advance of the detention hearing, I

17   would have to hear some additional authority on that.  If you

18   want to argue that tomorrow, I'll be all ears, but that --

19             MR. EGGERT:  Thank you.

20             THE COURT:  -- that would be the -- as I say, that

21   would be the anticipation, not necessarily the result.

22         All right.  So what else for the United States, if anything?

23             MS. GREGORY:  Nothing further, Your Honor.

24             THE COURT:  All right.  Mr. Renn, Mr. Eggert, anything

25   further for the defense?

1      MR. EGGERT:  Just one thing, Judge.  As you noted,

2   there was a lengthy sidebar, and when this proceeding concludes,

3   we'd ask if we can go back into the breakout room with Mr. Brown

4   and advise him of some of the things that occurred.

5      THE COURT:  Certainly.  Let me ask you again, just for

6   purposes of logistics, do you-all also want to use the breakout

7   room to have a discussion with probation?  I see probation was

8   about to ask a question anyway.

9   Officer Waddle, is that what you were gonna raise, or do you

10  have some other point you needed to make?

11     PROBATION OFFICER:  We could do it tomorrow in person.

12  If Mr. Renn and Mr. Eggert just want to call me and tell me if

13  they'd like to do it before or after court, I can make it work

14  out with the marshals so we can do that in person tomorrow if

15  they prefer.

16     MR. EGGERT:  Thank you.  We would do that and thank

17  you very much.

18     THE COURT:  All right.  Theresa, anything else?

19     DEPUTY CLERK:  No, sir.  Did you see my message?

20     THE COURT:  Say it again.  I'm sorry.

21     DEPUTY CLERK:  Did you see my message?

22     THE COURT:  Hang on for just a sec, please.

23  Quick question for counsel for both sides.  Ms. Gregory, do

24  you-all have a position on whether the sidebar or any part of it

25  should be sealed?

1          MS. GREGORY:  No, Your Honor.

2          THE COURT:  Mr. Eggert?  Mr. Renn?

3          MR. EGGERT:  No, no, Your Honor, no position.

4          THE COURT:  All right.  So, Theresa, I believe the

5     answer to the question is, no, it does not need to be under

6     seal.

7          DEPUTY CLERK:  Thank you.

8          THE COURT:  All right.  Thank you-all.  We'll see you

9     tomorrow, 1:00 p.m., in person in Louisville.

10         MR. EGGERT:  Thank you.

11         MR. RENN:  Thank you.

12         MS. GREGORY:  Thank you, Your Honor.

13         THE COURT:  Thank you.

14      (End of proceedings.)

15                  C E R T I F I C A T E

16      I am an official court reporter for the U.S. District Court

17   for the Western District of Kentucky and certify that the

18   foregoing is a true and correct transcript, to the best of my

19   ability, of the above pages, of the digital audio recording

20   provided to me by the Court of the proceedings taken on the date

21   and time previously stated in the above matter.

22
         s/ Dena Legg                    May 3, 2022
23    Official Court Reporter            Date

24

25