UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA

v.  No. 3:22-cr-33-BJB

QUINTEZ O. BROWN

\* \* \* \* \*

MEMORANDUM OPINION & ORDER

A federal grand jury charged Quintez Brown with two offenses after he allegedly attempted to shoot a Louisville mayoral candidate. Indictment (DN 1) at 1. The Government, citing past public statements and ongoing privacy concerns, seeks a protective order prohibiting Brown (or anyone acting on his behalf) from disseminating personal information about the witnesses and candidate. *See* Motion for Protective Order (DN 51) at 1, 4. Specifically, the Government notes that "the defense has made numerous public statements regarding the case." Reply (DN 58) at 5. And it expresses concern that Brown (through counsel) "will publicly release information about the victims obtained through discovery for purposes unrelated to this litigation." Motion for Protective Order at 4.

Brown, through his lawyers, has flatly denied that he or his lawyers have any "motive beyond the legal defense of Mr. Brown against the criminal charges he is facing." Response (DN 55) at 1–2. And the defense accepts the need "to protec[t] the personal identifying information of witnesses." *Id.* at 3. Yet the response brief objects to the breadth of the proposed order, characterizes it as akin to a "gag order," and asserts a "right to defend [Brown] in [the public] sphere." *Id.* at 2. No "good cause," in the defense's view, would support entry of a protective order. *Id.* at 4.

Yet as Brown appears to concede, some discoverable material in this case contains at least some sensitive information. This includes law enforcement officers' body-camera footage of interviews with the candidate and witnesses to the alleged attempted shooting. Motion for Protective Order at 1–2. The videos apparently reveal sensitive and witness-specific information—such as names, birthdates, and home addresses—which the Government says it cannot easily redact. *Id.* The candidate's cellphone, which might contain sensitive material, is also potentially discoverable. *Id.*

Does this amount to "good cause" for a protective order? If so, Federal Rule of Criminal Procedure 16(d)(1) authorizes a court to "deny, restrict, or defer discovery

… or grant other appropriate relief," such as a protective order. The Supreme Court, moreover, has instructed that courts "can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect." *Alderman v. United States*, 394 U.S. 165, 185 (1969). These orders necessarily balance competing interests in public access to open judicial proceedings, potential harm to third parties, and prejudice to the defendant. *See United States v. Dixon*, 355 F. Supp. 3d 1, 4 (D.D.C. 2019). Because the Government seeks the protective order, it has the burden to show good cause. *See United States v. Cordova*, 806 F.3d 1085, 1090 (D.C. Cir. 2015); *United States v. Ocampo*, No. 3:21-cr-163, 2022 WL 363594, at *1 (W.D. Ky. Feb. 7, 2022).

Despite the objections of counsel, the Government's proposed protective order is not limitless—certainly not as refined in the motion and reply. It would shield "(1) discovery containing unredacted dates of birth, social security numbers, or home addresses of witnesses, and (2) discovery containing personal information concerning the victims, including victim interviews or other records derived from the victims." Proposed Order (DN 51-1) at 1.

As noted above, Brown has "no objection to protecting the personal identifiers of the witnesses." Response at 1. And for good reason: dissemination of this type of sensitive information implicates obvious "privacy and safety concerns the Court cannot ignore." *Dixon*, 355 F. Supp. 3d at 5. This is embodied in the requirement that—even absent a court order—parties should partially redact individuals' birth dates, social security numbers, and home addresses. FED. R. CRIM. P. 49.1(a). And because redacting identifying information from the officers' body-camera footage would likely create difficulties for the parties and risks for the witnesses, a protective order in this case could "expedit[e] the flow of pretrial discovery materials." *Dixon*, 355 F. Supp. 3d at 8; *see also United States v. Cudd*, 534 F. Supp. 3d 48, 53 (D.D.C. 2021) (protective order appropriate when video footage likely contained sensitive personal information). Rule 16(d) "grants the Court considerable discretion to regulate" this process. *Dixon*, 355 F. Supp. 3d at 8. So even if Brown had opposed the protection of these videos, good cause would support the Government's proposed order insofar as it is limited to protecting personal identifying information of third parties.

Nor does Brown specifically object to protecting the candidate's phone—again, with good reason. "Unfettered release" of the candidate's phone "would raise significant privacy concerns." *Id.* at 5 (citing Crime Victims' Protection Act and issuing protective order). The Crime Victims' Rights Act provides the victims of alleged crimes with a right to "be treated with fairness and with respect for [their] dignity and privacy." 18 U.S.C. § 3771(a). "Courts around the country have relied on

the CVRA to find good cause for entry of protective orders." *United States v. Torres*, No. 20-cr-418, 2020 WL 4500046, at *4 (D.N.J Aug. 5, 2020). In this case "a protective order will safeguard identified personal information and expedite the discovery process." *United States v. Fraijo*, No. cr-20-248, 2022 WL 1018385, at *1 (D. Ariz. Apr. 5, 2022). And nothing suggests that the public's interest in the private contents of the candidate's phone (as distinguished from the interest in transparency surrounding court records or proceedings that may *concern* the candidate's phone) outweighs the competing privacy interests at stake. So good cause supports protecting the contents of the candidate's phone.

What about the Government's request to protect "other records derived from the victims"? Response at 1. Brown argues that this language is "not specified or limited in any way." *Id.*

Brown's concerns about an open-ended "gag order" are misplaced. The protective order does not purport to bar discussion of information gained from sources other than the discovery in this case. *See* Reply at 3–4 (discussing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984)). Brown's concerns are mitigated further by the Government's specification of the additional discovery materials it seeks to protect: the body-camera videos of witness interviews and information from the candidate's phone. *Id.* at 5. As discussed above, to the extent these materials contain personal identifying information, good cause supports restricting public dissemination. *See, e.g., Cudd*, 534 F. Supp. 3d at 53. The Government seeks to protect "footage [that] contains portions where the witnesses can be heard providing their names, dates of birth, and home addresses," and that sometimes reveals "officer notes regarding witnesses' personal identity information." Motion for Protective Order at 1. To the extent the Government "seeks [still more] restrictions on dissemination of information concerning" the candidate and other witnesses to Brown's alleged conduct, *id.* at 4, the parties' papers don't make clear what exactly this would cover. So the Court does not interpret the motion to cover material other than the personal identifying information of the candidate and other third parties, as well as the contents of the candidate's phone (if ultimately deemed discoverable).

To the extent the Government intended the motion to reach "other records" beyond those already discussed, Brown is right that it failed to carry its burden of providing "particularized and specific examples [it] seeks to protect." *Dixon*, 355 F. Supp. 3d at 5 (quotation omitted). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." *United States v. Wecht*, 484 F.3d 194, 211 (3d Cir. 2007) (quotation omitted). A broader protective order is therefore unwarranted at this time.

3

\* \* \*

A final note regarding professional advocacy is perhaps warranted. Experienced lawyers represent both sides in this serious and high-profile case. Yet for reasons known only to them, the lawyers were unable to resolve (or even narrow) what should be a straightforward discovery question. As officers of the court, they can and should endeavor to do a better job of conferring with respect and economy. No side benefits when rather inflammatory rhetoric delivers rather mundane disputes for resolution by the Court.

## ORDER

The Court grants the Government's motion for a protective order (DN 51) and orders the parties to protect:

1. Discovery containing unredacted dates of birth, social security numbers, or home addresses of witnesses;
2. Discovery containing personal information concerning the victims—specifically, body-camera footage of interviews with witnesses and the candidate, and the candidate's phone.

In producing discovery covered by this order, the United States shall label it as produced pursuant to a protective order. Defense counsel shall maintain it in a secure place to which no person who does not have reason to know its contents has access. And defense counsel shall restrict viewing and distribution of the covered discovery to Brown, defense counsel and their direct staff, investigators retained for this case by defense counsel, and expert witnesses retained for this case by defense counsel. Any such individuals are also bound by this order.

Before disclosing covered discovery or its content (assuming that content was not gained through means independent of the judicial process) to any such individuals, defense counsel must give the individual a copy of this order, require the individual to sign and date a copy, and maintain that copy until this proceeding and any appeals conclude.

Brown, defense counsel, and anyone with whom they share such discovery shall use or copy it and its contents solely for the preparation and litigation of this case and any collateral attack.

Benjamin Beaton, District Judge
United States District Court

October 17, 2022