UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CRIMINAL ACTION NO.  3:22-CR-00033-BJB-CHL

UNITED STATES OF AMERICA,                                                                            Plaintiff,

v.

QUINTEZ O. BROWN,                                                                                        Defendant.

**MEMORANDUM OPINION & ORDER**

Before the Court is the Motion to Authorize Review of Mental Health Records filed by the United States.  (DN 92.)  Defendant Quintez O. Brown filed a response (DN 94), to which the United States filed a reply (DN 95).  District Judge Benjamin J. Beaton referred the motion to the undersigned for resolution, including conducting a hearing if necessary.  (DN 93.)  Therefore, this matter is ripe for review.

**I.      BACKGROUND**

The United States alleges that on February 14, 2022, Defendant shot at C.G. with a firearm to intimidate C.G. while he was participating in a mayoral election in Louisville, Kentucky.  (DN 1 at PageID # 1.)  Shortly thereafter, Defendant was arrested by Louisville Metro Police Department officers on state charges.  (DN 92 at 1353.)  On February 16, 2022, counsel for Defendant was quoted as saying Defendant "has serious mental issues" in an online news article. (DN 95 at 1364; *see also* WDRB webpage dated Feb. 16, 2022, "Man Charged with Shooting at Mayoral Candidate Leaves Jail after Local Nonprofit Posts Bond" (https://www.wdrb.com/news/man-charged-with-shooting-at-mayoral-candidate-leaves-jail-after-local-nonprofit-posts-bond/article_9165579e-8f54-11ec-ab3e-5bd17ca39a7f.html)).

In response, the United States established a filter team, otherwise known as a "taint" team, to obtain Defendant's mental health records on March 21, 2022 and issued grand jury subpoenas to several medical providers for that purpose on March 22, 2022. (*Id.* at 1365; *see also* DN 92 at 1353.) The filter team consisted of an FBI agent and an attorney at the United States Department of Justice Public Integrity Section. (*Id.* at 1353.) Except for some pharmacy records, the filter team did not release the records it obtained to the United States's prosecution team. (*Id.*) On April 6, 2022, a Grand Jury in the Western District of Kentucky charged Defendant with one count of Interference with a Federally Protected Activity by attempting to murder C.G. in violation of 18 U.S.C. § 245(b)(1)(A) and one count of Use and Discharge of a Firearm During and in Relation to a Crime of Violence in violation of 18 U.S.C. § 924(c). (*See* DN 1.)

During the Defendant's April 15, 2022 detention hearing before the undersigned, Defendant introduced evidence concerning Defendant's mental health. (DN 24.) Specifically, Defendant proposed that as a condition of his release, Defendant "would get [mental health] treatment, is getting that treatment, is on medication, [and] would continue to get it if he's released." (*Id.* at 127-28.) On March 2, 2023, Defendant provided the United States with preliminary expert notices, including a notice related to psychiatrist Bhushan S. Agharkar, M.D., who provided a report opining on Defendant's mental health following a neuropsychiatric evaluation. (DN 95 at 1367.) Additionally, Defendant filed notice of intent to "assert a defense of insanity … and/or present expert evidence relating to mental disease or defect bearing on the issue of guilt in this case[]" on March 3, 2023. (DN 84 at 1334.) On March 15, 2023, the United States requested that Defendant be ordered to undergo a pre-trial psychiatric examination conducted by a licensed or certified psychiatrist or psychologist employed by the United States. (DN 87.) The motion was unopposed by Defendant and granted by this Court. (DN 89.)

On May 26, 2023, the United States moved for authorization to review the mental health records collected by the filter team and to provide the records to the Bureau of Prisons evaluator tasked with performing Defendant's forensic examination. (DN 92 at 1353.) Defendant opposes the motion for various reasons. First, Defendant takes issue with filter team's procurement and possession of his mental health records in alleged violation of the psychotherapist-patient privilege. (DN 94 at 1361; *see also* DN 92 at 1353.) Defendant argues that the filter team obtained the records in violation of "the rules" and that a transfer of those records to the United States constitutes a violation of Defendant's constitutional rights. (*Id.*) Further, Defendant argues that the United States has not met its burden to show the records are discoverable under Federal Rule of Civil Procedure 16 and that the United States's request is overbroad. (*Id.* at 1362.) Lastly, Defendant asserts that transfer of the records at issue may implicate Defendant's privileges or rights under the Health Insurance Portability and Accountability Act ("HIPAA"). (*Id.*)

## II.    LEGAL STANDARD

The psychotherapist-patient privilege is a federal common law privilege established by the Supreme Court that protects "confidential communications between a licensed psychotherapist and [their] patients in the course of diagnosis and treatment" from compelled disclosure. *Jaffee v. Redmond*, 518 US 1, 15 (1996). "The privilege is a testimonial or evidentiary one, and not constitutionally based." *United States v. Warshak,* 631 F.3d 266, 294 (6th Cir. 2010) (citations omitted). Because "[t]estimonial exclusionary rules and privileges contravene the fundamental principle that the public. . . has a right to every man's evidence," any such privilege "must be strictly construed." *United States v. Squillacote*, 221 F.3.D 542, 560 (4th Cir. 2000) (quoting *Trammel v. United* States, 445 U.S. 40, 50 (1980)). For the psychotherapist-patient privilege to apply, the patient must have expected that the communications would remain only with the

psychotherapist and undisclosed to others. *United States v. Sheppard*, 541 F.Supp.3d 793, 796 (W.D. Ky. 2021) (citation omitted). The psychotherapist-patient privilege, like other testimonial privileges, may be waived by the patient. *Jaffee*, 518 US at 15 n. 14. The Sixth Circuit has held that placing one's mental health at issue constitutes a waiver of the privilege. *Simon v. Cook*, 261 F. App'x 873, 886 (6th Cir. 2008). A party places his or her mental health at issue by making arguments that hinge on evidence regarding his or her mental health. *Id.* at 886; see also *In re Lott*, 424 F.3d 446, 453 (6th Cir. 2005) (noting that waiver principles apply to the "psychiatrist-patient privilege of a criminal defendant pleading an insanity defense") (quoting *Developments in the Law–Privileged Communications, Implied Waiver*, 98 Harv. L. Rev. 1629, 1638 (1985)). Defendant carries the burden of establishing the existence of psychotherapist-privilege. *Hibbs v. Marcum*, No. 3:16-CV-146-TBR-LLK, 2018 WL 953347, at *3 (W.D. Ky. Feb. 20, 2018) (citations omitted). To meet that burden, Defendant must demonstrate that the privilege has not been waived. *Id.*

### III. DISCUSSION

The Court authorizes the United States to receive and review Defendant's mental health records obtained by the filter team for the purpose of Defendant's forensic examination. Defendant's arguments in opposition are without merit, primarily due to his failure to provide any substantive law or argument that the Court may consider. First, Defendant asserts that the records were improperly obtained by the United States "without proper regard for rules and regulations protecting mental health records." (DN 94 at 1361.) Defendant does not specify which rules or regulations are implicated. Instead, Defendant opposes the presence of a law enforcement officer, *i.e.,* an FBI agent, on the filter team that collected his records. (*Id.*) Defendant argues that law enforcement "should not have had unfettered access to [Defendant's] private records," though he

fails to cite to any authority to support his assertion. Filter teams are commonly utilized to handle privileged information encountered during a criminal investigation. "To avoid intrusions resulting in prejudice, [the Government] implements a 'taint team' filter procedure to sort out privileged and potentially-privileged material." *United States v. Taylor,* No. 621CR00013GFVTHAI, 2022 WL 9408779, at *2–3 (E.D. Ky. Oct. 14, 2022). Taint teams are typically comprised of Assistant United States Attorneys who are not involved in the prosecution. *Id.* To the extent that law enforcement may also serve on the team, the Sixth Circuit has recognized "inherent risks posed by the use of taint teams which, while separate from the prosecution team, are members of the same prosecuting body and have some degree of interest in pursuing the investigation." *Id.* at *4 (quoting *In re Grand Jury Subpoenas*, 454 F.3d at 511, 523 (6th Cir. 2006)). As far as this Court can see, it is the same risk inherent in law enforcement as well as prosecutors on a filter team and Defendant does not distinguish otherwise. The Sixth Circuit held that, despite these inherent risks, filter terms "[are] permissible so long as the privilege-holders can challenge the [filter] team's privilege determinations." *Id.* Defendant does not allege that he was unable to challenge the privilege determinations. That remedy was, and may still be, available to him. Thus, the Court is not persuaded that the mere presence of a law enforcement officer on a filter team was improper.

Further, the filter team obtained the records through a subpoena, which Defendant does not challenge in his opposition. Defendant vaguely asserts that the filter team obtained his records in violation of HIPAA. HIPAA, which governs the confidentiality of medical records, provides that a grand jury subpoena alone is sufficient for a healthcare provider to "disclose protected health information." 45 C.F.R. § 164.512(f)(1)(ii)(B) ("A covered entity may disclose protected health information for a law enforcement purpose to a law enforcement official . . . [i]n compliance with and as limited by the relevant requirements of . . . [a] grand jury subpoena[.]"); *see also In re*

*Grand Jury Subpoena John Doe No. A01-209*, 197 F. Supp. 2d 512, 515 (E.D. Va. 2002) ("HIPAA regulations themselves make clear that any privacy interest patients have in their medical records is trumped by a grand jury subpoena that is 'relevant and material to a legitimate law enforcement inquiry.' 45 C.F.R. § 164.512(f)(1)(ii).")  Defendant fails to offer more than a vague reference to HIPAA as a basis to deny the United States's request.  Thus, the Court finds no basis to determine that the records were improperly obtained.

Similarly, Defendant failed to articulate a sufficient basis to challenge the transfer of those records to the United States.  The United States indicates that Defendant "asserted psychotherapist-privilege over [the] records" but Defendant does not mention the privilege in his opposition at all, much less articulate a substantive argument with cited authority.  (DN 92 at 1353.)  Instead, Defendant asserts that the United States's motion "goes far beyond what is covered by Rule 16 [of the Federal Rules of Criminal Procedure]" and that Defendant's "notice of an [i]nsanity defense does not suddenly make everything Discoverable" [sic].  (DN 94 at 1362.)  Defendant argues that "there is no basis for asserting that [Defendant's] mental health records are discoverable," presumably under Rule 16.  (*Id.*)  The threshold question is not whether the records are discoverable but whether they are privileged, including whether Defendant waived any such privilege.  Rule 16 sets forth the discovery obligations of criminal defendants and the government.  Here, Rule 16 is not applicable because the United States is not seeking discovery from Defendant and Defendant offers no basis or applicable law for the Court to consider otherwise.

Next, Defendant vaguely asserts that "under the rules," he is only required to submit to a mental health evaluation and not more when raising the insanity defense.  (*Id.* at 1362.)  Again, Defendant does not cite any applicable law or authority.  Both the United States and Defendant presume the existence of the psychotherapist-privilege, though Defendant failed to meet his burden

to establish that the privilege is applicable here. Nevertheless, the Court agrees it is likely that Defendant's records, which pertain to his mental health, are privileged to some extent. And there is no question that communications between a psychotherapist and a patient are generally protected from disclosure. The psychotherapist-patient privilege "serves the public interest" because "the mental health of our citizenry. . . is a public good of transcendent importance." *Jaffee*, 518 U.S. at 11. Without the privilege, "confidential conversations between psychotherapists and their patient would surely be chilled[.]" *Id.* Defendant vaguely asserts that his Due Process and Fifth Amendment rights may be implicated but fails to provide more than a sentence to argue as much. Defendant does not address that the psychotherapist-privilege is an evidentiary one or that the Sixth Circuit has denied requests to suppress evidence derived from this privilege because it is not a constitutional one. *See Warshak*, 631 F.3d at 294 (holding "suppression of any evidence derived from the privileged conversations would be [im]proper… given that the privilege is a testimonial or evidentiary one, and not constitutionally based"). Given the absence of any substantive argument to the contrary, the Court is not persuaded that transfer of the records to the United States constitutes a violation of Defendant's constitutional rights.

Rather, while the privilege may apply to Defendant's mental health records, the Court finds that Defendant waived the privilege by placing his mental health at issue. The Sixth Circuit has specifically noted that waiver principles apply to the "psychiatrist-patient privilege of a criminal defendant pleading an insanity defense." *Lott*, 424 F.3d at 453. Thus, Defendant's notice filed pursuant to Federal Rule of Criminal Procedure 12.2 of intent to assert the insanity defense is sufficient to constitute a waiver of the privilege.

The Court agrees, however, that the United States's request is overly broad. In addition to the materials discussed above, the proposed order submitted by the United States would authorize

the prosecution team to "review other records and conduct interviews that may be covered by psychotherapist-patient privilege" and to "provide the evaluator at the Bureau of Prisons with any mental health records it currently has or will obtain in the future." (DN 92-1 at 1358.) But, the United States puts forward no argument to support this prospective relief, and in fact fails to even address or acknowledge it in its motion. Therefore, the Court authorizes transfer to the prosecution team of only those records already obtained by grand jury subpoena and already in the filter team's possession. Further, the records at issue shall only be used to the extent necessary for the purpose of performing Defendant's forensic examination pursuant to the Court's April 23, 2023 order (DN 89). The Bureau of Prisons examiner charged with conducting Defendant's forensic examination may utilize the records during the examination and for the purpose of the examination but for no other purpose, interview, or examination without prior authorization by this Court.

## IV.     ORDER

For the foregoing reasons,

IT IS HEREBY ORDERED that the United States's motion (DN 92) is **GRANTED *in part*** and **DENIED *in part***. The United States is authorized to facilitate the transfer of the records specified herein from the filter team to the prosecution team for the latter's review and use in Defendant's forensic examination subject to the limitations expressed in this Order.

Colin H Lindsay, Magistrate Judge
United States District Court

cc: Counsel of record

June 30, 2023