UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **PLAINTIFF** |
| v. | **CASE NO. 3:22-CR-00033-BJB-CHL-1** |
| **QUINTEZ O. BROWN** | **DEFENDANT** |

**DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION FOR SECOND MENTAL HEALTH EXAMINATION OF DEFENDANT**

Comes the Defendant, Quintez O. Brown, by counsel, and submits this response in opposition to the Government's recent Motion for Second Mental Health Examination of Mr. Brown (DN 120).

**Relevant Procedural Background**

Mr. Brown was indicted in this matter on April 6, 2022. DN 1. Early on, Mr. Brown's mental state at the time of the alleged incident was an issue in the case. As an initial matter, in early 2022, the Government subpoenaed Mr. Brown's mental health records from certain providers and therapists, knowing that he suffered from mental health challenges and that he was hospitalized for in-patient treatment. These subpoenas were issued and served without knowledge or consent of Mr. Brown's defense team. Then, shortly after this federal prosecution was initiated, the Court held a lengthy hearing to determine whether Mr. Brown was eligible to be released from detention while awaiting trial. At that hearing, multiple lay witnesses testified as to Mr. Brown's mental health and specifically, mental health struggles he experienced around the time of the alleged offense. *See generally* DN 24, Trans. of Detention Hrg. And, counsel for the parties discussed with the Court the Government's having subpoenaed Mr. Brown's mental

1

health records. *Id.*, 51:5-52:18. Finally, the exhibits introduced at that hearing included documentation from a local health care provider describing Mr. Brown's inpatient treatment and hospitalization following the alleged incident. *Id.*, 77:17-78:16 (discussing Def. Ex. 4). Another exhibit was documentation from a psychiatrist that treated Mr. Brown while he was on home incarceration. *Id.*, 78:23-80:25 (discussing Def. Ex. 5). The presiding Magistrate Judge issued an order releasing Mr. Brown to home incarceration, which was stayed and ultimately reversed by the District Judge on motion from the Government. Mr. Brown has remained in custody.

As this case proceeded into litigation, defense counsel served on the Government a preliminary letter from the defense expert, Dr. Bhushan Agharkar, which indicated his initial impressions about what other evaluations of Mr. Brown may be needed. Defense counsel also timely filed a Notice of intention to introduce evidence at trial as to Mr. Brown's insanity at the time of the alleged defense, pursuant to FRCrP 12.2(a), and/or a mental disease or defect bearing on the issue of guilt, pursuant to FRCrP 12.2(b). DN 85. This Notice was filed on March 3, 2023. Less than two weeks later, on March 15, 2023, the Government filed a Motion for Pre-Trial Psychiatric Examination of Mr. Brown, seeking an examination pursuant to Mr. Brown's Notice of his intention to introduce evidence per 12.2(a) and/or 12.2(b). DN 87. In its Motion, the Government specifically requested an examination in order to present evidence to rebut Mr. Brown's claims that he suffered from a mental disease or defect bearing on the issue of guilt. DN 87 at p. 3 ("A psychological examination regarding whether the defendant has a 'mental disease or defect bearing on the issue of guilt' is appropriate and should be ordered."). At no point in its Motion did the Government seek to delay its requested evaluation until after Dr. Agharkar had more fully examined Mr. Brown.

The Court granted the Government's Motion on April 12, 2023. DN 89. In its Order, the Court directed a psychiatric examination of Mr. Brown that would include, among other points, "an opinion regarding to what extent Defendant suffers from a mental disease or defect or any other mental condition bearing on the issue of guilt…". *Id*. at 1. And the Court ordered that "the government is restricted from using any information derived from the examination for purposes other than addressing the insanity of defendant at the time of this offense and/or rebutting evidence presented by the defense relating to a mental disease or defect bearing on the issue of guilt in this case." *Id*.

Following that Order, Mr. Brown was transported, in federal custody, to Seattle, where he spent the next several months awaiting an evaluation by the Government's expert. Following that examination and report, Mr. Brown was transported back to Kentucky, at which time he was more fully evaluated by defense expert Dr. Agharkar. Dr. Agharkar submitted his report on March 28, 2024, and defense counsel promptly shared that report with the Government's attorneys.

Now, a short three months before trial is scheduled to begin in this case, the Government seeks a second examination of Mr. Brown. DN 120. On May 17, 2024, the Court held a telephonic hearing to briefly address the matter, after which an in-person hearing was scheduled and the defense was afforded to opportunity to file this written opposition to the Government's Motion. For the reasons discussed at the May 17 hearing and below, said Motion should be denied.

**Legal Analysis**

Federal Rule of Criminal Procedure 12.2 governs the instant dispute. The Rule requires defendants to provide notice of their intention to introduce at trial evidence of either insanity or a

mental disease or defect bearing on the issue of guilt. FRCrP 12.2(b). Following this notice, "the court may, upon the government's motion, order the defendant to be examined under procedures ordered by the court." The Government did move for such, and the Court granted that Motion. DN 87, 89. Seemingly unsatisfied with the report of that evaluation, the Government now approaches this Court for a second bite at the apple, and Mr. Brown opposes.

From the outset, it is important to note that the Government had ample notice of the defense's intention to introduce evidence of Mr. Brown's mental disease or defect bearing on the issue of guilt. The defense properly noticed this in its timely FRCrP 12.2 Notice (DN 85), the Government specifically sought approval of an expert evaluation of the noticed mental disease or defect evidence (DN 87 at 3-5), and the Court expressly ordered the Government expert to evaluate Mr. Brown for mental disease or defect bearing on the issue of guilt (DN 89 at 1). Not only that, the Government participated in a lengthy detention hearing over two years ago at which Mr. Brown's mental health at and around the time of the alleged offense was a main focus (DN 24) *and* the Government had possession of extensive mental health records that indicated Mr. Brown's mental health struggles during the relevant time period. Coupled with Mr. Brown's clear 12.2 Notice, the Government cannot claim to be surprised or caught unawares that Dr. Agharkar's full report addressed Mr. Brown's mental disease or defect bearing on the issue of guilt.

It matters not that Dr. Agharkar's preliminary letter did not explicitly address mental disease or defect bearing on the issue of guilt. The Government's focus here puts the cart before the horse, because the Government is not entitled to the full results and report of a defense expert before its Court-ordered evaluation may proceed (*see* discussion below), and in any event, Dr. Agharkar's preliminary report was just that – *preliminary* – of which the Government was well

4

aware. *See* DN 120 at 1. Indeed, the preliminary report neither provided an opinion about Mr. Brown's possible insanity *nor* mental disease or defect bearing on the issue of guilt, but rather provided Dr. Agharkar's initial observations about what further testing and evaluation may be warranted. And in its first Motion for Pre-Trial Psychiatric Examination, the Government specifically requested an examination to evaluate Mr. Brown's mental disease or defect:

> Here, the defense intends to present testimony of Dr. Agharkar that the defendant suffers from "a serious mental illness involving a major mood disorder and psychosis." Agharkar R. at 2. **The United States, therefore, is entitled to have its own psychological evaluation conducted on Brown in order to assess whether the defendant has a mental disease or defect bearing on the issue of guilt and potentially rebut Dr. Agharkar's claims.** An examination is warranted pursuant to Rule 12.2(b) and (c).

DN 87 at 5 (emphasis added).

In support of its request for a second mental health evaluation, the Government relies on a number of cases that are inapposite. DN 120 at 3-4. For instance, *U.S. v. Webster*, 162 F.3d 308 (5th Cir. 1998) and *U.S. v. Davis*, 93 F.3d 1286 (6th Cir. 1996) stand for the premise that the Court has authority to order a mental health evaluation upon Government Motion – but the Court here has already exercised its authority and granted such a Motion. DN 89. Not only that, all of the cases the Government cites pre-date the current version of FRCrP 12.2, which expressly mandates a court-ordered examination when notice is given of an insanity defense, and allows a court-ordered examination when notice is given of intent to introduce evidence related to mental condition bearing on the issue of guilt – again, *both* of which the Court has already expressly ordered in this case. DN 89.

The Government has not provided,[1] and undersigned counsel is not aware of, any cases that stand for the premise that the Government must be permitted to evaluate the defendant again

---

[1] The only case the Government cites that does address a second or subsequent evaluation is *U.S. v. Weston*, but it too is inapposite. 36 F.Supp.2d 7, (D.D.C. 1999). There, the defendant was subject to a Court-ordered examination

5

*after* the defense expert report has been submitted. If anything, it appears from the Rule and the available case law that defendants seeking to introduce 12.2 evidence are not required to disclose the results and report of their expert evaluations until after the Government's experts have disclosed *their* reports. For instance, the District Court for the Northern District of Iowa in *U.S. v. Johnson*, considering the government's motion for a mental health evaluation, found that "the government is not entitled to notice of the 'nature' of the defendant's mental condition prior to disclosure of the reports and results of testing by the government's experts" and "the Rule as a whole contemplates that the government will not have the 'results and reports' of the defendant's experts until after the government has disclosed the 'results and reports' of its own experts." 362 F.Supp.2d 1043, 1080 (N.D. Iowa Feb. 18, 2005). And indeed, a contrary holding would almost certainly lead to a chaotic never-ending circle of expert evaluations. Should a second evaluation of Mr. Brown lead to findings to which Dr. Agharkar must respond, he may then need to evaluate Mr. Brown again himself. Following that, would the Government again move the Court to allow for a subsequent rebuttal examination? Surely that cannot be the result, as Mr. Brown's trial is a short three months away.

      The Government cannot claim lack of notice (it had plenty) and it cannot claim that Dr. Agharkar's preliminary correspondence was limited to insanity (it was not). The Government expressly sought, and was granted, a mental health evaluation to include whether Mr. Brown suffered from a mental disease or defect bearing on the issue of guilt. It inexplicably now comes back to the Court seeking a second bite at the apple. The Government should not be rewarded for this gamesmanship. It had its opportunity to evaluate Mr. Brown. At that time, the Government

---

pursuant to a joint request by the government and the defense, which evaluation determined that the defendant was incompetent to stand trial. Following that report, the Government moved for another examination to rebut the finding of incompetency. Those facts and that holding do not apply here.

was fully aware Mr. Brown intended to introduce evidence related to a mental condition bearing on the issue of guilt. Nothing prevented the Government's expert from including that in their examination of Mr. Brown. Neither the Rules nor considerations of fairness and justice require that Mr. Brown be subjected to another intrusive mental health evaluation so close in time to his scheduled trial date.

## CONCLUSION

For the foregoing reason, the Government's Motion for a Second Mental Health Examination of Defendant should be denied.

Respectfully submitted,

*/s/ Rob Eggert*
**ROB EGGERT**
600 West Main Street
Suite 100
Louisville, Kentucky 40202
(502) 540-5700

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 20, 2024, the foregoing notice was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all of the attorneys of record.

*/s/ Rob Eggert*
**ROB EGGERT**